### In re HAMBURGER.

### In re SINGER.

### HAMBURGER et al. v. DYER (CHARBONNEAU et al., Intervenors).

Nos. 8718, 8822.

Circuit Court of Appeals, Sixth Circuit.

Jan. 17, 1941.

934

George Goldstein, of Detroit, Mich. (Harris W. Wienner and Samuel S. Greenberg, both of Detroit, Mich., on the brief), for appellants.

J. S. Horwitz, of Detroit, Mich., for appellee Dyer, trustee.

Henry H. Sills, of Detroit, Mich., for intervenors.

Harry H. Mead and Butzel, Levin & Winston, all of Detroit, Mich., Sonnenschein, Berkson, Lautmann, Levinson & Morse and Gottlieb & Schwartz, all of Chicago, Ill., and Shapero & Shapero, of Detroit, Mich., on the brief, for appellee and intervenors.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

These appeals are prosecuted from orders of the District Court entered in a proceeding instituted under chapter XII of the Chandler Act, 11 U.S.C.A. § 801 et seq., which provides for real property arrangements by persons other than corporations.[1] Appellants Hamburger and Singer each owned one-half of the Belcrest Hotel, which is the only real estate involved in the proceeding, and as this record shows, the only asset of the debtors. Appellants filed separate petitions, listing secured and unsecured obligations, to which an identical arrangement was appended, which proposed that the appellants should retain possession and control of the real estate and should be paid five per cent. of its gross income, and be allowed the occupancy of apartments for their own use. The causes were consolidated in the District Court and in this court. The premises are subject to a first trust mortgage indenture securing an issue of $1,250,000 in bonds and a second mortgage of $195,168.50. Hamburger, who at the time of the execution of the first mortgage indenture owned the entire property, is the mortgagor, and Singer, who subsequently acquired his interest, has not assumed the first mortgage. The aggregate indebtedness secured by the first trust mortgage as of May 2, 1939, amounted to $1,975,118.88. Back taxes of some $28,000 were due upon the property when the petitions were filed. The proceedings were commenced by the debtors after the trustee under the mortgage started foreclosure proceedings in the state court.

Appeal No. 8718 involves two orders of the District Court, one entered February 7, 1940, and the other February 19, 1940. In the first order the court found that $1,157,000 in principal amount of the debts listed was represented by unsubordinated bonds; that the appraised value of the hotel did not exceed $550,000; that all creditors having claims inferior to the unsubordinated bonds would not be materially and adversely affected by any arrangement because their claims were without value, and ordered that such creditors should not participate in or vote upon any proposed arrangement. The court also decided that the debtors had no equity in the property, and hence had no right to participate in any proposed arrangement.

In the order of February 19, 1940, the court ordered that an arrangement prepared by the bondholders' committee, and another proposal submitted by the representative of the second mortgagee, should be submitted to the creditors along with the arrangement proposed by the debtors. In this order the court classified the individual and unrelated debts of each appellant under the same classification.

Appellants contend that the order of February 7, 1940, is erroneous, urging in effect that the court in this order proceeds to dispose of the debtors' property without the debtors' consent, and that the court has no power under the statute to do this. They contend that the court has no authority under chapter XII of the Chandler Act to rule that unsecured creditors cannot participate in the arrangement even

---

[1] An arrangement is defined in § 406 as meaning "any plan which has for its primary purpose the alteration or modification of the rights of creditors or of any class of them, holding debts secured by real property or a chattel real of which the debtor is the legal or equitable owner."

though the property securing the unsubordinated indebtedness is not of sufficient value to pay the prior liens. They also urge that since only the debtor may institute a proceeding under this chapter, the debtor cannot properly be excluded from participation and consideration of any proposed arrangement. They point out that this order of the District Court contemplates that the debtors shall give up their property without securing any relief from their other debts, and without securing the full relief given by bankruptcy.

We think that the judgment of the District Court must be affirmed. The statute neither expressly nor by implication provides for consent by the debtor to any arrangement, nor for participation in the proceedings if the real property covered by the arrangement is so far below the unsubordinated debts in value that no equity is left for the debtor. While § 461(2) provides that an arrangement "shall provide for the rights of all other creditors of a debtor who may be affected by the arrangement," in view of the finding so amply supported by the facts, that other subordinated creditors were not affected by the arrangement, we think that the District Court acted within its statutory authority in making this order. Section 476 provides that the confirmation of an arrangement shall discharge a debtor from his debts and liabilities provided for by the arrangement, and since under the statute the arrangement is to cover those debts secured by the debtors' real estate, the unsecured creditors and the debtor have no place in the proceedings unless some equity remains in the debtor. In view of the statement with regard to chapter XII in H.R. 1409, 75th Cong., 1st Sess., p. 51, that the "principal purpose is to furnish the same relief to individual debtors as is now available to corporations under 77B or under chapter X· of this bill," the holding of In re 620 Church Street Bldg. Corp., 299 U.S. 24, 57 S.Ct. 88, 81 L.Ed. 16, applies here. The debtor and unsecured creditors were not permitted to participate in the plan there involved, nor was their consent thereto held to be necessary. The District Court under this record found rightly that the unsecured creditors and the debtors were not affected by the nature of the proposed arrangement.

Although an arrangement is required to provide adequate means for its execution which "may include: the retention by the debtor of all or any part of his property' [§ 461(12)] this provision is not mandatory and cannot be availed of for the debtors' relief unless it is included in an arrangement approved by the requisite number of creditors affected (§ 466). The creditors affected by this arrangement did not accept the arrangement proposed by the debtors, and hence the proposal that appellants retain the property could not be confirmed.

As to the order of February 19, 1940, the debtors claim that this constituted reversible error because they are entitled to have the creditors consider the debtors' proposal independently, and not in conjunction with competing plans. The statute contemplates the submission of but one arrangement at the first creditors' meeting (§ 435), but it also provides that the creditors may propose an arrangement (§ 466). While we think that the submission of the creditors' proposals simultaneously with that of the debtors' was error, under this record it was harmless.

This order also classified the individual and unrelated debts of appellant Hamburger with debts of the same nature owed by appellant Singer. The order in this respect was erroneous. Obviously the personal debt of one debtor cannot be lumped together with the personal debts of another debtor, even though each of them has an interest in the same real estate. However, since the personal obligations of the debtors are not dealt with by the arrangement confirmed, the error is harmless. Another question as to Singer arises from the fact that since he did not assume the mortgage, he owed none of the debts discharged by the court's order. But Singer took his one-half interest in the real estate subject to the first mortgage, and later filed a petition instituting these proceedings under chapter XII. His interest in the property is liable for the unsubordinated obligations, and Singer cannot complain.

Appeal No. 8822 is from an order entered July 22, 1940, confirming an arrangement as modified, proposed by the bondholders' committee. The arrangement gave the benefit of the entire property to the unsubordinated bondholders. The District Court then discharged the debtors from all of their debts and liabilities except as specifically provided in the arrange-

ment or in the order excluding such debts as are not dischargeable under the provisions of § 17 of the Bankruptcy Act, as amended 11 U.S.C.A. § 35. While this may be intended as a discharge of all debts of the appellants, under the statute (§ 476), which restricts discharge to the debts provided for in the arrangement, the court could not release the debtors from the debts owed to the unsecured creditors. Appellants urge as to this order also that they have not consented or agreed to the plan confirmed, and that the court cannot approve such an arrangement. The answer to this contention, as before, is that the statute does not require the consent of the debtor to the arrangement.

 We concede that it is difficult to see what relief is available to the debtor under this chapter as to unsecured debts or subordinated bonds, if the real property is substantially less in value than the face of the secured obligation. It is true that the debtors in this proceeding have given up the real property but have not been discharged of their debts with the exception of those secured by the trust indenture, under which Singer was never liable. It was open to Singer to avail himself of the general provisions of the Bankruptcy Act, and thus to secure complete relief. As to this proceeding, Congress has not made confirmation of the arrangement conditional upon the court's granting to the debtor such relief as Singer claims to be entitled to, nor has it provided for the discharge of any debts except those covered by the arrangement.

The debtors, however, are discharged from all personal liability secured by the real estate, which in Hamburger's case amounts to approximately a million dollars, arising from the mortgage indenture obligation. This, after all, is the purpose of the proceedings under this chapter, as declared in the report of the House Judicial Committee (H.R. 1409, supra). This report states that "Chapter XII permits the settlement, satisfaction or extension of the time of payment of debts secured by real property or chattels real, including the right to obtain relief under the Bankruptcy Act without the necessity of submitting to an adjudication." Since the value of the property is approximately thirty per cent. of the face value of the unsubordinated bonds and interest, we are unable to see that the arrangement proposed by the debtors providing for retention of possession

and for compensation for management could properly have been imposed upon the bondholders under this chapter.

The recent decisions of the Supreme Court in Case v. Los Angeles Lumber Products Co., Ltd., 308 U.S. 106, 122 et seq., 60 S.Ct. 1, 84 L.Ed. 110; In re 620 Church Street Bldg. Corp., supra; Securities & Exchange Commission v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, support this conclusion. Appellants argue that these decisions deal not with chapter XII, but with other chapters of the Chandler Act, and hence are not controlling here. But the consideration in these cases of the relative value of the assets owned by the debtor and the interests of the creditors involved, we think has bearing. Where, as here, there is no equity in the property above the first mortgage, there is no value to be protected on behalf of subordinate creditors and the debtors.

The orders are affirmed.