Supreme Savings and Loan Association, a Corporation, Plaintiff-Appellee, v. Theodore J. Lewis and Thaddeus J. Lisowski, Walter J. Janas and Loretta E. Janas, His Wife, Defendants-Appellants.

**Gen. No. 51,927.**

First District, Third Division.

October 1, 1970.

Mitchell Kilanowski, of Chicago, for appellants.

Philip S. Aimen, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff seeks to set aside a redemption from a foreclosure sale or, in the alternative, to recover damages for malicious interference with a contractual relationship which it is charged existed between plaintiff and Walter Janas and Loretta, his wife. The cause was referred to a master in chancery to take testimony and report the same to the court together with his conclusions of fact and law. At the conclusion of plaintiff's case the defendants moved for a finding in their favor under section 64 (5) of the Civil Practice Act. The master thereupon heard arguments on the motion, found in favor of de-

fendants and made his report to the court, recommending that the suit be dismissed. Plaintiff filed objections which were overruled by the master and ordered to stand as exceptions to the report. The chancellor found that plaintiff had established a prima facie case, upheld plaintiff's exceptions and referred the case back to the master with directions to proceed with the taking of evidence. Defendants chose not to introduce any evidence and by stipulation proofs were closed. The master then filed his report recommending, contrary to his previous report, that plaintiff recover damages against defendants. That report was approved by the chancellor and plaintiff was awarded damages against the defendants Lewis and Lisowski in the sum of $18,296.67. By a separate decree, Count I of plaintiff's complaint, which sought to set aside the redemption and Count III alleging an unlawful conspiracy to effect a redemption, were dismissed for want of equity. Since no cross-appeal has been taken, the only issue before this court is whether the evidence established a case of malicious interference by the defendants with plaintiff's contractual rights. The facts follow.

Plaintiff originally was the holder of a first mortgage on improved real estate at 2117 West Melrose Street, Chicago, and in 1962 filed suit for foreclosure. The premises were then occupied by one Gladys Vincent, the mortgagor. Pursuant to a decree of foreclosure entered on June 12, 1962, a sale was held by a master in chancery, at which plaintiff's bid of $9,500 was accepted. The sale was approved and a certificate of sale issued, stating that a deed to the premises would be forthcoming on June 12, 1963, unless sooner redeemed. A duplicate certificate of sale was recorded on June 22, 1962.

In March 1963, the plaintiff listed the premises in question for sale with several realtors including Palmer Realty Associates, Inc. That was more than three months before the plaintiff was entitled to a deed or in actual position to sell the property. In the latter part of March, the premises were shown by Palmer Realty to Walter and Loretta Janas. The Janases signed a contract of sale, and a meeting was set at the plaintiff's office for April 11. Before that meeting took place, the Janases

sought the advice of defendant Lisowski, an attorney and real estate broker, and asked his assistance in the transaction. On April 11, 1963, the Janases together with Lisowski and one Jaffe of Palmer Realty met with Peter Kezon, president of Supreme Savings and Loan Corporation. Kezon told them that the documents signed by the Janases were not satisfactory since no provision had been made for the possibility that a redemption might be effected before the expiration of the twelve-month statutory period, which would prevent the plaintiff from conveying title to the Janases. It was agreed that plaintiff's attorney would prepare a new agreement to provide for such contingency. Both of the Janases testified, in contradiction of Kezon, that at that meeting no explanation was offered as to why the property was not for sale nor was any suggestion made that another contract would be drafted by plaintiff. Lisowski testified that at the April 11 meeting Kezon stated that the property was not yet for sale, but that he would inform the Janases when it would be.

After Lisowski left plaintiff's office, he had a conversation with the Janases in which they said they wanted the property and he told them they could not have it prior to the expiration of the statutory redemption period. Lisowski testified that he asked the Janases if they would consent to his taking title to the property, apparently with the understanding that he was to convey it to them and that Walter Janas said, "Yes." The Janases testified that this conversation dealt only with the fee that Lisowski was to charge for his services.

On May 1, 1963, after notification from plaintiff that the contract of sale and a closing statement were ready, the Janases picked up the documents and took them to Lisowski for examination. Lisowski struck out a paragraph in the contract which prohibited the Janases from recording the contract of sale and returned the papers to them. That contract was expressly conditioned upon the issuance of a deed after expiration of the redemption period. The Janases returned to plaintiff's office and signed the necessary papers for the purchase of the property, depositing $1,200 as earnest money.

On May 10, 1963, Lisowski on behalf of his stepson Theodore Lewis purchased the second outstanding mortgage against the property for $200. He also acquired the interest of Gladys Vincent, whose mortgage had been foreclosed by the plaintiff as hereinbefore stated, for $200. The purpose of those transactions was to enable Lisowski to redeem the property in question. On May 14, 1963, Lisowski paid the necessary amount to the master who had issued the certificate of sale to the plaintiff and secured a certificate of redemption. On July 15, 1963, plaintiff returned to the Janases the earnest money it had been holding and "cancelled" the contract between them. On July 23, 1963, Lisowski and his wife entered into a contract with the Janases to convey the property to them for $14,500, which was $500 less than the amount they had agreed to pay the plaintiff under the terms of the contract which was dependent on plaintiff's acquiring title. The issue before us is whether the facts constitute a proper case for application of the doctrine of malicious interference with contract.

■ The first case recognizing the existence of a cause of action for malicious interference with the contractual rights of another is the English decision of Lumley v. Gye, 2 Ell & BL 216 (1853). There the defendant "maliciously intending to injure the plaintiff" was held liable for persuading a renowned opera singer to abandon her exclusive contract with the plaintiff. The unique character of the services involved largely induced the court's decision. The principle of law which has evolved from Lumley is now established in Illinois and a defendant will be held liable if he intentionally and without justification induces another to breach his contract with a third party. Herman v. Prudence Mut. Cas. Co., 41 Ill2d 468, 244 NE2d 809; Loewenthal Securities Co. v. White Paving Co., 351 Ill 285, 184 NE 310; Doremus v. Hennessy, 176 Ill 608, 52 NE 924; Graff v. Whitehouse, 71 Ill App2d 412, 219 NE2d 128. There are reservations, however, in the application of the doctrine and a right or privilege to interfere in contractual relationships may exist under certain circumstances.

■ In Herman v. Prudence Mut. Cas. Co., supra, the court strongly indicated that where a complaint is suffi-

cient to state a cause of action for malicious interference with contract, the question of privilege must be carefully examined before any liability can be imposed. As noted in Herman, the Restatement of the Law of Torts (ed 1939) outlines the factors to be weighed in each case and upon which the existence of a privilege to interfere must depend. We quote from page 63 of that treatise as follows:

> "In determining whether there is a privilege to [induce a third person not to perform his contract with another], the following are important factors:
>
> "(a) the nature of the actor's conduct,
> "(b) the nature of the expectancy with which his conduct interferes,
> "(c) the relations between the parties,
> "(d) the interest sought to be advanced by the actor and
> "(e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand."

The first factor to be considered here is the conduct of defendant which resulted in termination of the plaintiff's contract. The evidence reveals that plaintiff listed the property with several real estate brokers approximately three months before the expiration of the statutory redemption period; that is, three months before plaintiff had the right to deliver a deed. Lisowski testified that he examined the public records in March 1963 and learned that the first mortgage had recently been foreclosed, that the redemption period had not expired and that a junior mortgagee also held a right of redemption. Armed with that information, he proceeded to obtain assignments of the outstanding interests in the property. He then effected a redemption and sold the property to the Janases. There was nothing unlawful in the method by which Lisowski thus obtained title to the premises.

■ Under the terms of the contract between plaintiff and the Janases, the issuance of a master's deed at the expiration of the redemption period was a condition

which had to occur before a duty of performance arose. There was no certainty that plaintiff would realize its expectancy arising out of the contract with the Janases because there were two unexercised rights of redemption outstanding. Plaintiff, as the purchaser at a mortgage foreclosure sale, acquired no title to the property, either legal or equitable. Hack v. Snow, 338 Ill 28, 169 NE 819; Allison v. White, 285 Ill 311, 120 NE 809; Litwin v. Litwin, 375 Ill 90, 30 NE2d 619; Williams v. Williston, 315 Ill 178, 146 NE 143. The holder of a certificate of sale merely has a right to a master's deed if redemption is not made within the statutory period or, if redemption is effected, a right to receive the redemption money. Hruby v. Steinman, 374 Ill 465, 30 NE2d 7; Wein v. Albany Park Motor Sales Co., 312 Ill App 357, 38 NE2d 556. It is undisputed that plaintiff derived no standing from its certificate of sale which would enable it to prevent the lawful exercise of any outstanding right of redemption.

The most significant feature of the relationship between the plaintiff and Lisowski is its competitive nature. That is evidenced by the effort each expended in the hope of deriving a quick profit from the sale of the premises to the Janases. The methods used by Lisowski in thwarting plaintiff's financial expectations were, as we earlier noted, entirely within the law. Lisowski testified that he first became aware of the outstanding rights of redemption through a title search he conducted in late March. The title situation was a matter of public record. However even if, as plaintiff alleges, Lisowski's knowledge of the unexpired rights of redemption was derived from negotiations between plaintiff and the Janases, he was retained by the Janases to represent their interest in the negotiations and owed no duty to plaintiff which would render his subsequent conduct culpable.

The next factor to be considered is Lisowski's purpose in interfering with the contract. We may assume from the evidence that he was animated by a desire to further his own economic self-interest, as was the plaintiff. There is nothing in the law however which prevents a person with knowledge of a possible gain to be derived from a redemption, from acquiring and exercising the

right to redeem. Moreover Lisowski paid $400 to obtain control of the outstanding redemptive rights, $200 of which he paid to the mortgagor and $200 directly to a junior mortgagee. This brings us to a consideration of the public policy of this State and its relationship to the competing interests of the parties in the instant case.

The recognized purpose of redemption is to benefit the debtor through the satisfaction of as many of his debts as possible and, equally, to benefit creditors by affording them an opportunity to obtain payment of their judgments. To that end redemptions are permitted insofar as the provisions of the statute fairly authorize them. Wojcik v. Stolecki, 411 Ill 443, 104 NE2d 288; Hruby v. Steinman, 374 Ill 465, 30 NE2d 7; Elliott v. Valkanet, 19 Ill App2d 346, 153 NE2d 588. By favoring the exercise of the right to redeem, the legislature has provided an incentive to a bidder at a foreclosure sale to offer an amount which reflects the reasonable value of the premises being sold. The greater the disparity between the highest bid at a sale and the reasonable value of the premises, the greater the likelihood that a redemption will be effected. In the instant case the amount of the plaintiff's successful bid was $9,500. The property was listed for sale only a short time before a purchaser (Janas) was found who was willing to pay $15,000. The disparity between the cost of redeeming the property and the amount at which it could be sold provided an economic stimulus to those knowledgeable in such transactions to acquire and exercise the outstanding redemptive rights. In listing the property for sale with several brokers, the plaintiff sought to attract prospective purchasers to a parcel of real estate the title to which it did not possess. Listing property for sale does not terminate the redemptive rights conferred by statute or prevent their lawful assignment. Plaintiff, by listing the property for sale before the statutory period had run on the outstanding redemptive rights, did so at its own peril and cannot now be heard to complain of actions taken by those whose attention was drawn to the property by the offer to sell. The defendants discovered that title to the property could be acquired more quickly and economically by purchasing the outstanding interests and

paying the redemption money. This they not only had a right to do, but it is a method of acquiring title which is highly favored by our laws. The reason for such favored treatment is clear. Unsatisfied creditors at a foreclosure sale receive something at least which they would not have received had those rights been allowed to expire. To that extent Lisowski's position is in accord with the object and purposes of the foreclosure law. It is also in accord with the factors set forth in the Restatement of the Law of Torts, supra, and considered in Herman v. Prudence Mut. Cas. Co., 41 Ill2d 468, 244 NE2d 809, as determining the right or privilege of a person to interfere with the contractual rights of others. Accordingly we do not consider this a proper case for imposition of liability for malicious interference with contract.

The judgment of the Circuit Court is reversed.

Judgment reversed.

DEMPSEY, P. J. and McNAMARA, J., concur.