**In re SPICEWOOD ASSOCIATES, an Illinois Limited Partnership; Proceedings for a Real Property Arrangement Under Chapter XII of the Bankruptcy Act.**

**No. 77 B 5893.**

United States District Court, N. D. Illinois, E. D.

Nov. 10, 1977.

Donald L. Johnson, D. Calvin Sincock, William Biederman, Marks, Katz Walker & Blatt, Chicago, Ill., for Mellon Bank, N.A.

Donald H. Reuben, Kirkland & Ellis, Chicago, Ill., for the receiver, American National Bank & Trust Co. of Chicago.

Robert B. Chatz, John W. Costello, Gary D. Friedman, Phillip M. Heller, Arvey, Hodes, Costello & Burman, Chicago, Ill., for petitioner, Spicewood Associates, an Illinois limited partnership.

## MEMORANDUM OF DECISION AND ORDER

JULIUS J. HOFFMAN, Senior District Judge.

This is an action by the debtor Spicewood Associates, an Illinois limited partnership, to effect a real property arrangement pursuant to the provisions of Chapter XII of the Bankruptcy Act, 11 U.S.C. § 801, *et seq.* The petition for a real property arrangement was filed on August 23, 1977, and on October 31, 1977, the debtor filed its proposed plan of arrangement. The first meeting of creditors was held by this court on November 1, 1977. At that meeting, Mellon Bank, a major creditor of Spicewood Associates, entered its objections to Spicewood's proposed plan. Both Mellon Bank and Spicewood Associates subsequently filed memoranda in argument of those objections. The court adjourned the first creditor's meeting to November 15, 1977. The case is now before the court on this 10th day of November, 1977, for ruling on the objections of Mellon Bank to the debtor's proposed plan of arrangement.

## I. BACKGROUND

This Chapter XII proceeding is closely related to the case of *Mellon Bank v. Spicewood Associates, et al.,* Case No. 76 C 3802, F.Supp. (N.D.Ill., filed October 13, 1976), which case also now pends on this court's calendar. A brief discussion of that litigation is therefore necessary to a full appreciation of this proceeding.

*Mellon Bank v. Spicewood Associates, et al.,* Case No. 76 C 3802 (N.D.Ill., filed October 13, 1976), is primarily a foreclosure proceeding. The plaintiff's complaint, as twice amended, is in four counts. In Counts I and II, the plaintiff seeks foreclosure of two mortgages over a parcel of land known as the Centre Court Apartment Complex. Additionally, personal deficiency decrees are sought against certain of the defendants for any amount still owing after the foreclosure sale. Counts III and IV are not relevant to this Chapter XII proceeding.

On May 18, 1977, the plaintiff and defendants Spicewood Associates, Intervest Services, Incorporated and Sampath Nama filed a joint motion for the appointment of a receiver to manage the Centre Court Complex during the pendency of Case No. 76 C 3802. Spicewood Associates is the record owner of the Centre Court Complex; Intervest Services, Incorporated and Sampath Nama are its general partners. Appointment of a receiver was said to be necessary because of the "distressed condition" of the mortgaged premises. On May 20, 1977, this court appointed the American National Bank and Trust Company of Chicago as receiver. Its duties included the management and preservation of the property during the pendency of Case No. 76 C 3802.

On June 28, 1977, the court entered summary judgment in favor of the plaintiff as to those portions of Counts I and II which seek foreclosure of the mortgages. On July 25, 1977, the court entered its decree of foreclosure and sale. By that decree, the Centre Court Complex was ordered sold to satisfy the mortgage loans.

With the Sheriff's sale then scheduled for August 31, 1977, on August 23, 1977, de-

fendant Spicewood Associates filed its petition under Chapter XII of the Bankruptcy Act for a real property arrangement. On the same day, acting pursuant to § 414 and § 428 of the Bankruptcy Act, 11 U.S.C. § 814 and 11 U.S.C. § 828 respectively, Bankruptcy Judge Toles entered stay orders by which he enjoined the Sheriff from carrying out that foreclosure sale. Had those orders not been entered, the same result would automatically have occurred by virtue of Rule 12–43 of the Federal Rules of Bankruptcy Procedure.

For the following reasons, this court was of the opinion that resolution of this Chapter XII proceeding and Case No. 76 C 3802 should be by this court. First, Spicewood Associates is both the sole petitioner in this Chapter XII proceeding and a key defendant in Case No. 76 C 3802. Additionally, it is the current titleholder of the Centre Court Apartment Complex, which property is central to both lawsuits. In Case No. 76 C 3802, as a major part of its prayed for relief, the plaintiff seeks the order of foreclosure and sale against that property. It is also the only real estate involved in this Chapter XII proceeding. Finally, Mellon Bank is both the only plaintiff in Case No. 76 C 3802 and is the holder of the first and second priority security interests in the Centre Court Complex. Thus, the two cases must be considered to be closely related. For this reason, and because of the conflicting nature of the relief sought in each case, there existed the very real probability of conflicting orders being entered were each case tried by a different court. More importantly, by virtue of its involvement in Case No. 76 C 3802, and especially because of reports provided it by the court appointed receiver, American National Bank and Trust Company, the court was aware that the Centre Court Complex had fallen into what must be considered to be a "distressed condition", which condition necessitated the elimination of all avoidable delay. By virtue of its involvement in Case No. 76 C 3802, this court recognized that it was in a superior position to expedite these proceedings.

For these reasons, the court acted to have this Chapter XII proceeding transferred from Bankruptcy Judge Toles' calendar to that of this court. More specifically, Rule 102(b) of the Federal Rules of Bankruptcy Procedure, as made applicable in Chapter XII real property arrangement proceedings by Rule 12–5 of the Federal Rules of Bankruptcy Procedure, gives express authority to the United States District Courts to withdraw a case from the bankruptcy court. Rule 102(b) provides:

> The district judge may, at any time, for the convenience of parties or other cause, withdraw a case in whole or in part from a referee and either act himself or assign the case or part thereof to another referee in the district.

See also *In re Holland,* 411 F.Supp. 730 (E.D.Wis.1976); Advisory Committee Note, Fed.R.Bank. R. 102. However, Rule 2.02 A of the Local Bankruptcy Rules for the United States District Courts of the Northern District of Illinois requires that the decision to remove must come from the Executive Committee of this court. That rule states in relevant part:

> No district judge shall withdraw pursuant to the provisions of Rule 102(b) of the Bankruptcy Rules . . . except as a result of an order by the Executive Committee . . . .

This court therefore petitioned its Executive Committee to withdraw this case from Bankruptcy Judge Toles' calendar for reassignment to this court's calendar as a case related to Case No. 76 C 3802. On October 3, 1977, the Executive Committee entered its order reassigning this Chapter XII proceeding to this court.

## II. BANKRUPTCY COURT JURISDICTION

Before addressing the debtor's proposed plan of arrangement and Mellon Bank's objections thereto, the court must decide whether a bankruptcy court can have any jurisdiction over Spicewood Associates' Chapter XII real property arrangement petition. The Mellon Bank has argued at various times that Spicewood Associates is

not possessed of any real property, and therefore cannot proceed under Chapter XII. This court does not agree with that argument. It has concluded that the Chapter XII petition is properly before the bankruptcy court.[1]

█ It is clear that a partnership such as Spicewood Associates can proceed under Chapter XII. 9 *Collier on Bankruptcy,* ¶ 2.07 at page 761; see also § 406 of the Bankruptcy Act, 11 U.S.C. § 806. Thus, as long as Spicewood Associates is a "debtor" within the meaning of § 406(6) of the Bankruptcy Act, 11 U.S.C. § 806(6), it may seek relief under Chapter XII. *Owners of "SW8" Real Estate v. McQuaid,* 513 F.2d 558 (9th Cir. 1975). Section 406(6) defines a debtor as follows:

(6) "debtor" shall mean a person, other than a corporation . . ., who files a petition under this chapter and who is the legal or equitable owner of real property . . . which is security for any debt, but shall not include a person whose only interest in property proposed to be dealt with by the arrangement is a right to redeem such property from a sale had before the filing of such petition.

From the documents now on file in this proceeding, it is clear that the only real property as to which Spicewood Associates is even arguably the "legal or equitable owner" is the Centre Court Apartment Complex. Thus, its status as a "debtor" for purposes of Chapter XII must turn on its interest in the Complex. Mellon Bank has argued that because not only has this court entered its decree of foreclosure and sale against that property, but the allowed period of redemption has also run, notwithstanding the fact that Spicewood Associates is the current titleholder (or "owner of record"), it cannot be considered a "legal or equitable owner" of the property for purposes of Chapter XII. For the following reasons, this court does not agree.

█ The first issue to be considered is that of the controlling law. Determination of the applicable law is not straightforward. Because the Centre Court Complex is locat-

ed in Illinois, Illinois law does control those issues in Case No. 76 C 3802 which relate to the decree of foreclosure and sale. However, as stated by the First Circuit Court of Appeals in rejecting the argument that state law must control in Chapter XII proceedings,

A national policy enacted by Congress in the exercise of its constitutional authority to establish "Uniform Laws on the subject of Bankruptcies", U.S.Const. art. I, § 8, cannot be impeded by the idiosyncracies of local property laws. *In re Colonial Realty Investment Co.,* 516 F.2d 154, at page 158 (1st Cir. 1975).

In attempting to ascertain any prevailing federal policy on the question, the court must look to § 406(6) of the Bankruptcy Act, 11 U.S.C. § 806(6). Prior to the enactment of the Chandler Act of 1938, the rule had been that a Chapter XII proceeding could not ". . . affect any proceeding in any court in which a final decree was entered." Bankruptcy Act of 1898, ch. 541, § 1 *et seq.,* 30 Stat. 544, as amended by Act of June 7, 1934, ch. 424, § 2, 48 Stat. 923. The words "final decree" were construed to include a decree of foreclosure and sale, even though the sale had not actually occurred at the time of the filing of the petition. *In re Sorenson,* 77 F.2d 166 (7th Cir. 1935). However, this section, as amended by the Chandler Act of 1938 now defines a "debtor" to exclude a person ". . . whose only interest in property proposed to be dealt with by the arrangement is a right to redeem such property from a sale had before the filing of such petition." Chandler Act of 1938, ch. 575, § 1, 52 Stat. 916. Thus, § 406(6) must now be considered to extend the bankruptcy court's jurisdiction to all cases in which the given property is not actually sold at the date the Chapter XII petition is filed, even though a decree of foreclosure and sale was previously entered. 9 *Collier on Bankruptcy,* ¶ 2.07 at page 765.

█ Even were this court to base its decision only in Illinois law, its conclusion

---

1. By virtue of the action taken by the Executive Committee, that is, of course, now this court.

would not change. Spicewood Associates is a "debtor" under Chapter XII for all relevant purposes if it is the "legal *OR* equitable owner" of the Centre Court Complex. Notwithstanding the decree of foreclosure and sale previously entered in Case No. 76 C 3802, and notwithstanding the fact that the redemption period has run, under Illinois law Spicewood Associates is currently the record owner of the Centre Court Complex. As titleholder, it must be considered the "at law", or "legal", owner of the property, and will remain such until completion of the foreclosure sale and subsequent filing of the Sheriff's Deed. See: *Supreme Savings and Loan Association v. Lewis,* 130 Ill.App.2d 16, 264 N.E.2d 857 (1970); *Kling v. Ghilarducci,* 3 Ill.2d 454, 121 N.E.2d 752 (1954); *Hoeffner v. Hoeffner,* 389 Ill. 253, 59 N.E.2d 684 (1945). Thus, Spicewood Associates must be considered the "legal" if not the "equitable" owner of the Complex, as required by § 406(6).

## III. THE PROPOSED PLAN OF ARRANGEMENT AND OBJECTIONS THERETO

From the Schedule of Debts and the Statement of Affairs now filed by the debtor Spicewood Associates, as well as from the various other documents now on file in this proceeding, the following financial picture emerges. Spicewood Associates is an Illinois limited partnership which is in the business of real estate investment and management. As the court has previously stated, the only real estate owned and/or managed by it is the Centre Court Complex. The estimated market value of all assets other than that property is only $500. Thus, for all practical purposes, the only asset of this debtor is the Centre Court Apartment Complex. While no appraisal

has been made of that property, various offers of purchase have been received both by Spicewood and Mellon Bank.[2] An actual purchase is, of course, the truest indicator of value. None of the offers received by either party exceeded $1,300,000, and the court has therefore concluded that the fair market value of the Centre Court Apartment Complex does not exceed that figure.

According to its Schedule of Debts, the liabilities of Spicewood Associates total approximately $2,922,000. Of that amount, $320,000 represents liabilities to its limited partners for loans made by them to the partnership, and $150,000 is owed to third parties having no ownership interest in Spicewood Associates. These obligations are fully unsecured.

Of the remainder, approximately $1,865,-000 is owed to Mellon Bank, and the final $587,000 constitutes an obligation to Walter J. Kassuba, the prior titleholder of the Centre Court Complex.[3] The obligation to Kassuba grew out of the purchase of the Complex by Spicewood Associates, and the debtor acknowledges that it is a disputed liability in an unliquidated amount. Whatever rights Kassuba may have either in the Complex itself or against the debtor generally as a result of the sale by him of the Complex, they are subordinate to the debtor's liabilities to Mellon Bank. The debtor's obligations to Mellon Bank are secured by first and second priority mortgages on the Centre Court Complex. Any claim Kassuba may have to the Complex is subordinate thereto.

Although in a Chapter XII proceeding any creditor may file a proposed plan of arrangement, 11 U.S.C. § 866, to-date none has done so here. The debtor's proposed

---

**2.** A motion for the appointment of an appraiser was made by Spicewood Associates. However, while this petition was filed on August 23, 1977, that motion was not filed until October 20, 1977. With the debtor's proposed plan then due on October 21, 1977, the court could see no merit to the motion, and felt that it would only generate delay. For this reason, the court denied the motion. It did, however, extend the debtor's allowed time for filing its

proposed plan to and including October 31, 1977.

**3.** Mellon Bank has asserted that the debtor's total obligation to it now exceeds $1,900,000. For purposes of this decision, the court has elected to use the figure supplied by the debtor. However, the court's ruling would not change were it to use the figure suggested by Mellon Bank.

plan contains two alternative proposals. Under either alternative, the Centre Court Complex, the only piece of real estate owned by the debtor, would be sold, with $1,200,000 of the proceeds being paid to Mellon Bank as full payment of all amounts now owed by the debtor to Mellon. The remainder would be used to satisfy the other obligations of Spicewood Associates. The only difference between the two proposals is that under the first alternative the Centre Court Complex would be sold to the Inland Real Estate Corporation for the sum of $1,260,000, while under the second alternative the property would be sold for a like or greater amount at public auction.

More specifically, the plan calls for the sale of the Centre Court Apartment Complex, either to the Inland Real Estate Corporation or at public auction, with the proceeds to be distributed as follows:

*CLASS I:* Costs of administration and related expenses;

*CLASS II:* Claims incurred by the debtor during the pendency of these proceedings;

*CLASS III:* Other claims and obligations entitled to priority under the Bankruptcy Act;

*CLASS IV:* All other debts of the debtor, to be paid in the following order:

*Class A:* $1,200,000 to the Mellon Bank as full satisfaction of the amounts owed it by Spicewood Associates.

*Class B:* Payment of $10,000 to Walter J. Kassuba as full satisfaction of any obligation of the debtor Spicewood Associates to Kassuba.

*Class C:* Full payment to all creditors with total claims of under $150.

*Class D:* Creation of a fund of $50,000 out of which all other creditors of the debtor would be paid on a pro rata basis.

The sale of the Centre Court Complex would be free and clear of all claims against it by Spicewood's creditors, except that it would continue to be subject to liens in the nature of mechanic's liens and/or real estate taxes.[4]

The Mellon Bank has objected to both alternatives now proposed by the debtor. Mellon first argues that the proposed plan is one of liquidation and not a plan of arrangement or reorganization as contemplated by Chapter XII of the Bankruptcy Act. Second, Mellon "affirmatively rejects" the plan. It is Mellon's position that without acceptance by it, confirmation of the plan is impossible, and the court should therefore dismiss this Chapter XII proceeding.

In its response to these objections, Spicewood takes the position that its plan is not one of complete liquidation, as there will be retained both the partnership entity and all assets other than the Centre Court Complex. Moreover, there will be retained ". . . tax benefits which will be beneficial and are an asset of the (debtor)." The debtor further argues that Mellon's acceptance is not necessary to confirmation of its proposed plan of arrangement because Mellon has been afforded ". . . adequate protection for the realization by (it) of the value of (its) debts . . ." against the property herein dealt with, as required by the so-called "cram down" provisions of § 461(11) of the Bankruptcy Act, 11 U.S.C. § 861(11).

The receiver in Case No. 76 C 3802, American National Bank and Trust Company of Chicago, has also filed a response to the proposed plan of arrangement. By that response, the receiver points out that the plan makes no provision for its fees and expenses of administering the Centre Court Complex, which now total $26,000.00.[5]

---

4. The proposed plan also calls for the use of any funds now held by the receiver American National Bank and Trust Company from its supervision of the operations of the Centre Court Complex. However, from the court's review of the statements of income and expenses periodically filed by the receiver, any such amount is insubstantial and need not be considered.

5. Under the controlling Illinois law, the fees and expenses of a receiver in administering a property are properly chargeable against the

More importantly, the receiver, by its response, has informed the court that unless the Centre Court Complex is sold promptly, ". . . certain measures must be taken promptly to preserve the Centre Court Apartments from waste, deterioration and injury, to maintain the Complex in a safe and healthful condition, and to care for and preserve the property." The receiver believes these measures will cost approximately $100,000, and it states that absent an immediate sale, ". . . it will be necessary . . . to petition this court for authority to issue Certificates of Indebtedness in an amount approximating $100,-000." The proposed plan makes no provision for these needed repairs.

## IV. RULING OF THE COURT

Spicewood Associates has taken the position that this court cannot now take any action on the objections of Mellon Bank to its proposed plan of arrangement. It argues that no such action may be taken until the court has heard from all interested creditors, or until November 15, 1977, which is the date now set for the next meeting of creditors. This is assertedly so because prior to that date all creditors will not have had an opportunity to examine the debtor's proposed plan and enter their responses thereto. The court does not agree with this argument. Rather, this court is satisfied that it has both the authority and the responsibility to now enter its rulings on Mellon's objections to the debtor's proposed plan of arrangement.

Mellon's first argument is that the so-called plan of arrangement presented by the debtor is not a plan of arrangement, but rather is a plan of liquidation. As such, it should not even be considered by the court for confirmation. The court must acknowledge its reservations as to whether the plan proffered by Spicewood constitutes a plan of arrangement as contemplated by Chapter XII of the Bankruptcy Act. If the debtor's plan were confirmed by this court, by the debtor's own admission the net results would be as follows: The debtor

would be relieved of all its various obligations, the debtor would retain assets having a fair market value of only $500, and the debtor would retain its status as an entity plus certain "tax benefits" which it has chosen not to detail.

This court has substantial doubt that the plan now before it satisfies the ambition of Chapter XII to substitute an arrangement for liquidation. *In re Colonial Realty Investment Co.*, 516 F.2d 154 (1st Cir. 1975); *In re Dick*, 296 F.2d 912 (7th Cir. 1961). However, the court has concluded that it need not now decide that issue, and will therefore not attempt to do so.

Under § 467 of the Bankruptcy Act, 11 U.S.C. § 867, a plan of arrangement may be confirmed where all creditors affected thereby have accepted it. That situation is not present here. Alternatively, under § 468 of the Act, 11 U.S.C. § 868, a plan may be considered for confirmation if ". . . it has been accepted in writing by the creditors of each class, holding two-thirds in amount of the debts of such class affected by the arrangement . . . ." For present purposes, Spicewood's creditors may be classified as either secured or unsecured creditors. Taking the statements contained in the debtor's Schedule of Debts as true, it has obligations to secured creditors totalling approximately $2,452,000. Of that amount, $1,865,000 constitutes obligations to Mellon Bank; the remainder is owed to Walter J. Kassuba. As the court has previously stated, Mellon Bank has now formally rejected and refused to accept the debtor's plan. Without its acceptance, it is clear the proposed plan cannot be confirmed. See 11 U.S.C. § 868.

The debtor has argued that this conclusion is erroneous. It is the position of the debtor that because the "cram down" provisions of § 461(11) of the Act, 11 U.S.C. § 861(11), have been complied with, Mellon's acceptance is not a prerequisite to the confirmation of the plan. The court does not agree. Under § 461(11):

An arrangement—

.    .    .    .    .

owner thereof and/or against the proceeds from the sale thereof. See, e. g., *Compton v.*

*Paul K. Harding Realty Co.*, 6 Ill.App.3d 488, 285 N.E.2d 574 (1972).

(11) shall provide for any class of creditors which is affected by and does not accept the arrangement by the two-thirds majority in amount required under this chapter, adequate protection for the realization by them of the value of their debts against the property dealt with by the arrangement and affected by such debts, either, as provided in the arrangement or in the order confirming the arrangement, (a) by the transfer or sale, or by the retention by the debtor, of such property subject to such debts; or (b) by a sale of such property free of such debts, at not less than a fair upset price, and the transfer of such debts to the proceeds of such sale; or (c) by appraisal and payment in cash of the value of such debts; or (d) by such method as will, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection.

Thus, Mellon's failure to accept the plan is not to be considered provided Spicewood has provided it ". . . with adequate protection for the realization by (it) of the value of (its) debts against . . ." the Centre Court Complex.

Spicewood argues that by providing Mellon Bank should receive $1,200,000 out of the proceeds of the sale of the Complex, it has satisfied § 461(11). The court cannot agree. Under either alternative, the debtor's plan calls for the sale of the Centre Court Complex at a price not below $1,260,000. No improvements or alterations to the Complex are called for prior to the sale. If the sale of the Complex is to be at an amount in excess of $1,200,000, and Mellon's first priority interests therein exceed that figure, it is clear to this court that § 461(11) has not been satisfied.

■ There is an additional reason to conclude Spicewood's reliance upon § 461(11) is not well founded. Regardless of compliance with § 461(11), no plan of arrangement may be confirmed over the unanimous objection of secured creditors. *In re Georgetown Apartments*, 3 Bkp.Ct.Dec. 512 (M.D. Fla.1977); *Meyer v. Rowen*, 195 F.2d 263 (10th Cir. 1952); *In re Herweg*, 119 F.2d 941 (7th Cir. 1941). Here, Mellon Bank may not be Spicewood's only secured creditor, but it is clear that it is both that debtor's first priority, and by far its most substantial, secured creditor. In the particular facts of this case, the court is therefore convinced this doctrine is applicable.

Even were the court to conclude otherwise, its decision would not change. To the extent Spicewood's obligations to Mellon Bank cannot be satisfied out of the Centre Court Complex property, those obligations are considered unsecured debts. See 11 U.S.C. § 853 and Rule 12–37 of the Federal Rules of Bankruptcy Procedure; *see also Kyser v. MacAdam*, 117 F.2d 232, at page 238 (2nd Cir. 1941); 9 *Collier on Bankruptcy*, ¶ 7.03 at pages 1007–1009. Assuming Mellon's interest in the Centre Court Complex to be worth only $1,200,000, the portion of Spicewood's total obligation to it constituting an unsecured liability would be approximately $665,000. Assuming Kassuba's claim to be totally unsecured and valuing it at the full $587,000 as listed in the Schedule of Debts filed by Spicewood, Spicewood's total unsecured obligations would be approximately $1,722,000. Given Mellon's total rejection of the plan, Spicewood still cannot gain the acceptances of two-thirds of its unsecured creditors, as required by § 468, 11 U.S.C. § 868, before this court can confirm the plan.

For these reasons, the court is now convinced the debtor's proposed plan of arrangement cannot be confirmed. It is further satisfied that no creditor has an intention to or will be able to present an acceptable and workable plan of arrangement. This petition has now been pending for approximately two and one-half months, and no creditor has yet indicated any intention to file a proposed plan. Additionally, given the objections of the largest creditor, Mellon Bank, it is inconceivable to this court that any such plan will be forthcoming. Finally, the court has concluded that no workable and acceptable plan can be put forth by the debtor. Given the objections of Mellon Bank and the fact that the Centre Court Complex has a value not exceed-

ing $1,300,000, a plan of arrangement could only be effected if its partners were willing and able to inject substantial sums of additional capital into Spicewood Associates. No such ability and/or willingness has been suggested to-date, and there is every reason to conclude no such ability and/or willingness will be forthcoming in the future.

■ This being the situation, this court must now act in conformity with its duty to weigh the anticipated and foreseeable benefits flowing from allowing this proceeding to continue against the detriment to the creditors from so doing. *In re Colonial Realty Investment Co., supra; In re Georgetown Apartments, supra.* Because the court is convinced no plan can be effected herein, it must now exercise that duty and now dismiss this Chapter XII petition of Spicewood Associates for a real property arrangement. *Taylor v. Wood,* 458 F.2d 15 (9th Cir. 1972); *In re Bekare Realty Associates,* 3 Bkp.Ct.Dec. 646 (E.D.Penn.1977); *see also Meyer v. Rowen, supra; Preas v. Kirkpatrick & Burks,* 115 F.2d 802 (6th Cir. 1940), *affirming In re Preas,* 33 F.Supp. 578 (E.D.Tenn.1940).

As both the court and all parties are full aware, the Centre Court Apartment Complex is in a distressed condition. The receiver, American National Bank and Trust Company of Chicago, has filed a report in this proceeding by which it has informed the court that the property is in immediate need of substantial repairs if further deterioration and loss of value are to be avoided. With the foreclosure sale in Case No. 76 C 3802 now scheduled for November 11, 1977, that goal can best be accomplished, and the interests of the creditors best protected, only by now dismissing this proceeding and allowing that sale to go forward as scheduled.

■ The argument of the debtor that the court must hear from all interested creditors as to the proposed plan of arrangement before dismissing this Chapter XII proceeding does not persuade this court otherwise. The value of the Centre Court Complex does not exceed the secured claims of the Mellon Bank against it. Therefore,

the interests of unsecured creditors are irrelevant and are not to be considered. *In re Hamburger,* 117 F.2d 932 (6th Cir. 1941). Additionally, as the court has previously stated, this court is of the firm conviction that it has both the authority and a duty, acting as a court of equity in this Chapter XII proceeding, to protect what it perceives to be the best interests of Spicewood's creditors by now dismissing this proceeding. *Taylor v. Wood, supra; In re Bekare Realty Associates, supra.*

Accordingly, this petition of Spicewood Associates, an Illinois limited partnership, for a Chapter XII real property arrangement will be, and the same hereby is, dismissed.