**534**

In re KMJ–72, an Arizona limited partnership, and Wickenburg Inn Development Company, an Arizona limited partnership, Debtors.

KMJ–72, an Arizona limited partnership, and Wickenburg Inn Development Company, an Arizona limited partnership, Plaintiffs,

v.

ALAMAND CORPORATION, a Delaware Corporation, as successor to Beneficial Standard Mortgage Investors, a California real estate investment trust, and Dixit Corporation, a California Corporation, Defendants-Counter-Plaintiffs.

Bankruptcy Nos. 78 B 8732, 78 B 8733.

United States Bankruptcy Court, N. D. Illinois, E. D.

Dec. 5, 1980.

Francis X. Grossi Jr. and Richard L. Epling, Katten, Muchin, Gitles, Zavis, Pearl & Galler, Chicago, Ill., for plaintiffs.

Allan G. Sweig, Nachman, Munitz & Sweig, Ltd., Chicago, Ill., for defendants-counter-plaintiffs.

## MEMORANDUM OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This cause coming on to be heard upon the adjourned first meeting of creditors, the adjourned hearing on indemnity and the adjourned hearing on adjudication or dismissal, pursuant to Section 481(2) of the 1898 Bankruptcy Act ("Bankruptcy Act") and Chapter XII Rule 12–41(b) and Chapter XII Rule 12–19(d) of the Rules of Bankruptcy Procedure, and due and proper notice of these hearings having been given to all parties entitled thereto, and

The Court having held hearings on the above-mentioned matters on June 3, 4, 5, 24, 25, and 30, 1980, and on October 9, 1980, and the Court having heard evidence, and the Court having examined the pleadings and files in this cause, and having heard arguments of counsel, and being fully advised in the premises;

The Court Finds:

1. The Debtors, KMJ–72 and WICKENBURG INN DEVELOPMENT COMPANY ("Debtors"), represented by the law firm of NACHMAN, MUNITZ & SWEIG, LTD., are both Arizona limited partnerships. The Creditor, ALAMAND CORPORATION, is a Delaware corporation, and the Creditor, DIXIT CORPORATION, is a California corporation and a wholly owned subsidiary of ALAMAND CORPORATION. ALAMAND CORPORATION and DIXIT CORPORATION ("Creditors") are represented in this

proceeding by the law firm of KATTEN, MUCHIN, GITLES, ZAVIS, PEARL & GALLER.

2. In September 1973, February 1974, and between February 1974 and February 1975, the Creditor, ALAMAND CORPORATION, through its predecessor in interest, BENEFICIAL STANDARD MORTGAGE INVESTORS ("BSMI"), loaned the Debtors the aggregate sum of $4,400,000.00 for the construction and development of the Wickenburg Inn ("Inn"). The Inn is a 160 acre tennis and dude ranch located in Wickenburg, Arizona, about 60 miles north of Phoenix, Arizona. The Inn is surrounded by 2,400 acres of undeveloped desert land which is the subject of two land trusts, White and Suggs ("Trusts"), in which the Debtor, KMJ–72, held second beneficial interests.

3. On August 11, 1976, as further security for payment on the above-mentioned obligations, the Debtor, KMJ–72, assigned its second beneficial interests in the Trusts to the Creditor, ALAMAND CORPORATION. In the autumn of 1978 the Creditor, DIXIT CORPORATION, purchased the first beneficial interests in the Trusts.

4. In 1975 the Creditors instituted a foreclosure action against the Debtors in the Superior Court of Yavapai County, Arizona, which was settled by agreement among the parties on August 11, 1976. On July, 18, 1977, a second foreclosure action was instituted by the Creditors in the Superior Court of Yavapai County, Arizona, and the Debtors have denied liability and have counterclaimed on the grounds of fraud and breach of the 1976 settlement agreement. On September 30, 1977, the Superior Court of Yavapai County, Arizona appointed Ira Edward Cheek receiver of the Inn and the surrounding 2,400 acres of undeveloped desert land.

5. On January 26, 1978, the Debtors were notified that they were in default on the Trusts and that they had until November 7, 1978, at 2:00 P.M., Mountain Standard Time, to cure such defaults or forfeit their interests in the Trusts. On November 7, 1978, at 2:30 P.M., Central Standard Time, the Debtors filed two separate Petitions for Arrangements under Chapter XII of the Bankruptcy Act in the United States District Court for the Northern District of Illinois situated in Chicago, Illinois; said cases were assigned to the Honorable Frederick J. Hertz, Bankruptcy Judge, as Case Numbers 78 B 8732 and 8733, and were consolidated on November 7, 1978.

6. On March 29, 1979, the Debtors filed a plan of arrangement, and then filed an amended plan of arrangement on September 21, 1979. On October 6, 1980, the Debtors filed a second amended plan of arrangement after proofs were closed on the hearings on adjudication or dismissal on June 30, 1980, and pending this Court's final decision. On July 23, 1979, the Creditors filed a plan of arrangement. Sufficient acceptances have not been filed to confirm the Debtors' amended plan of arrangement filed on September 21, 1979, or the Creditors' plan of arrangement filed on July 23, 1979. On October 9, 1980, the Clerk of the United States Bankruptcy Court for the Northern District of Illinois filed a memorandum with this Court which reads as follows:

AMENDED ARRANGEMENT PROPOSED BY DEBTORS– Filed 9/21/79
37 GENERAL UNSECURED CLAIMS FILED TOTALLING ........$577,950.20
32 ACCEPTANCES FILED TOTALLING .......................$477,267.15
SUFFICIENT IN NUMBER   SUFFICIENT IN AMOUNT

7 SECURED CLAIMS FILED TOTALLING ...................$5,365,014.57
0 ACCEPTANCES FILED TOTALLING ......................$  –0–

INSUFFICIENT IN NUMBER   INSUFFICIENT IN AMOUNT
Four rejections filed to Debtors' Amended Arrangement filed 9/21/79.

PLAN OF ARRANGEMENT PROPOSED BY CREDITORS– Filed 7/23/79

37 GENERAL UNSECURED CLAIMS FILED TOTALLING ........ $577,950.20

3 ACCEPTANCES FILED TOTALLING ........................ $ 73,855.52

INSUFFICIENT IN NUMBER   INSUFFICIENT IN AMOUNT

7 SECURED CLAIMS TOTALLING ......................... $5,365,014.57

7 ACCEPTANCES FILED TOTALLING ...................... $5,365,014.57

SUFFICIENT IN NUMBER   SUFFICIENT IN AMOUNT

7. On November 7, 1978, the Debtors filed a complaint for a temporary restraining order and a complaint for an injunction against foreclosure on the Trusts in the Arizona state court before the Honorable Frederick J. Hertz, Bankruptcy Judge, and a temporary restraining order was entered on November 7, 1978. On January 23, 1979, a preliminary injunction was entered restraining the Creditors from foreclosing upon the Debtors' interests in the Trusts in Arizona state court, and on January 29, 1979, the Creditors filed a notice of appeal from the January 23, 1979, order. Said appeal is currently pending before the Honorable Hubert L. Will, United States District Court Judge for the Northern District of Illinois, Case Number 79 C 805.

8. On November 27, 1978, the Creditors filed a motion to dismiss Case Number 78 B 8732 for want of jurisdiction or in the alternative to dismiss or transfer both of the above-entitled cases for improper venue. On July 27, 1979, the Honorable Frederick J. Hertz, Bankruptcy Judge, denied the Creditors' motion, and on July 30, 1979, the Creditors filed a notice of appeal to the United States District Court for the Northern District of Illinois. Said appeal is currently pending before the Honorable Hubert L. Will, United States District Court Judge for the Northern District of Illinois, Case Number 79 C 3587.

9. On February 9, 1979, more than three months after the filing of these Chapter XII proceedings and one month after the entry of the preliminary injunction on January 23, 1979, the Debtors first filed their complaint to determine the validity and extent of liens. Said complaint is similar to the Debtors' counterclaim of fraud and breach of the 1976 settlement agreement filed in the second foreclosure action pending before the Superior Court of Yavapai County, Arizona. On April 27, 1979, five months after the filing of this case, the Debtors amended said complaint. On March 9, 1979, the Creditors filed their answer and for the first time filed a counterclaim to lift or modify the automatic stay, pursuant to Rule 12–43(d) of the Rules of Bankruptcy Procedure which provides for hearings for relief from the stay at, "the earliest possible date, and it shall take precedence over all matters except older matters of the same character."

10. In order to prepare for trial on matters pending before the Honorable Frederick J. Hertz, Bankruptcy Judge, the Creditors sought extensive discovery. On January 29, 1980, Judge Hertz ordered the Debtors to produce all written agreements or memoranda of verbal agreements pertaining to the creation of a joint venture for the development, sale, financing or refinancing of the Inn by and among the Debtors and various financing sources, including John B. Wogan, Jr. ("Wogan"), a real estate developer in Denver, Colorado. Under said order, the Creditors were precluded from showing or delivering said documents or passing on information contained therein to any other person, firm or corporation, and the use of said documents was limited to the pending Chapter XII proceeding.

11. On December 3, 1979, some 13 months after the filing of this Chapter XII proceeding, the Creditors filed a petition for withdrawal of reference from the Honorable Frederick J. Hertz, Bankruptcy Judge, with the Executive Committee of the United States District Court for the Northern District of Illinois ("Executive Committee"), and alleged undue delay of this proceeding. On December 7, 1979, the Executive Committee denied the Creditors' petition without prejudice, with leave to renew said petition in ninety days. On February

29, 1980, the Creditors filed a second petition for withdrawal of reference with the Executive Committee. On March 7, 1980, the Executive Committee withdrew the reference of the above captioned matter from the Honorable Frederick J. Hertz, Bankruptcy Judge, and this case was reassigned to the undersigned, Edward B. Toles, Bankruptcy Judge.

12. On April 25, 1980, after due notice to the parties, this Court, the undersigned presiding, set the adjourned first meeting of creditors, the adjourned hearing on indemnity, and the adjourned hearing on adjudication or dismissal for June 3, 4, and 5, 1980. Said hearings were held on the above-mentioned dates, and further hearings were held on June 24, 25, and 30, 1980. On May 9, 1980, this Court modified the January 29, 1980, order entered by Judge Hertz, and required the Debtors to produce to the Creditors for inspection within 15 days documents pertaining to the creation of a joint venture for the development, sale, financing or refinancing of the Inn. The documents to be produced specifically included the following: correspondence, memoranda, written proposals, applications to lenders, commitment letters, financial statements, reports, projections and development plans. On May 12, 1980, the Creditors filed a notice of deposition of Wogan, who resides in Denver, Colorado, and on May 21, 1980, this Court denied the Debtors' motion to quash the deposition of Wogan. On May 27, 1980, upon the Creditors' motion, the Honorable John F. McGrath, Bankruptcy Judge, United States Bankruptcy Court, District of Colorado, in Denver, Colorado, issued a subpoena *duces tecum*, and required Wogan to appear for a deposition on May 29, 1980, with his business records pertaining to the development of the Inn. On May 29, 1980, Wogan filed a motion to quash the subpoena *duces tecum*, and on that date Judge McGrath ordered Wogan to deliver said records to this Court for *in camera* inspection and a ruling whether said records should be released to the Creditors. Pursuant to the order of Judge McGrath, on May 30, 1980, eight folders of documents were received by this Court from the law firm representing Wogan in Denver, Colorado, BADER & COX. On June 3, 1980, this Court received an additional folder of documents from the law firm of BADER & COX. On June 13, 1980, the Creditors filed a motion for the production of the documents received by this Court on May 30, 1980, and on June 3, 1980. On June 23, 1980, the Creditors were permitted to examine said documents, in chambers, and introduced relevant portions into evidence at the hearings on adjudication or dismissal. On June 30, 1980, proofs were closed, and this Court, after arguments of counsel, ordered the parties to file proposed findings of fact and conclusions of law on or before July 31, 1980. Said findings were filed on that date.

13. Clearly, from the facts heretofore stated all parties, Creditors and Debtors, were dilatory in prosecuting this action during the 16 month period in which it pended before the Honorable Frederick J. Hertz, Bankruptcy Judge. Apparently, during said period the parties were attempting to arrive at a settlement of the matters, as transpired in the first foreclosure action filed in 1975 and settled by agreement of the parties on August 11, 1976. The testimony before this Court of Joseph Ehrenreich, chief financial officer of the Creditor, ALAMAND CORPORATION, demonstrates that the parties were involved in extensive and detailed settlement negotiations while this case pended before Judge Hertz. (See Debtors' Exhibit One received in evidence, Letter dated June 20, 1979, from Joseph Ehrenreich, chief financial officer of ALAMAND CORPORATION).

The Court Concludes and Further Finds:

1. The purpose of Chapter XII of the Bankruptcy Act is to provide a means for the rehabilitation of debtors, other than corporations, who are insolvent, and whose debts are secured by real property. Typically, a Chapter XII proceeding includes creditors having a security interest in the debtor's real property, and may encompass both secured and unsecured creditors. Under Chapter XII of the Bankruptcy Act the goal is to keep the debtor in business during the preparation of a plan of arrangement

by which all creditors are to be paid. Once a debtor files a voluntary petition for an arrangement under Chapter XII of the Bankruptcy Act, the bankruptcy court obtains exclusive jurisdiction over the debtor's property, wherever situated. In order to insure that the debtor has an opportunity to propose a viable plan, Chapter XII of the Bankruptcy Act provides for the stay of all lien enforcement proceedings. Once the debtor proposes a plan of arrangement, it is reviewed by the court at the meeting of creditors. Also, certain creditors may file a proposed plan of arrangement.

2. Under Section 481(2) of the Bankruptcy Act and Rule 12–41(b)(1) of the Bankruptcy Rules of Procedure a case may be dismissed for want of prosecution. Rule 12–41(b)(1) of the Bankruptcy Rules of Procedure reads as follows:

(b) *Dismissal or Conversion to Bankruptcy for Want of Prosecution, Denial of Confirmation, Default, or Termination of Plan.* The court shall enter an order, after hearing on such notice as it may direct dismissing the case, or adjudicating the debtor a bankrupt if he has not been previously so adjudged, or directing that the bankruptcy case proceed, whichever may be in the best interest of the estate —(1) for want of prosecution. . . .

While the purpose of Chapter XII arrangement proceedings is to allow the debtor ample time to reorganize and rehabilitate itself, free from the threat of foreclosure action, courts must consider seriously the interests of creditors and the diminution of the estate by the continued pendency of the Chapter XII case. *In re Spicewood Associates,* 445 F.Supp. 564, 573 (N.D.Ill.1977); *Gardens of Cortez v. John Hancock Mutual Life Ins. Co,* 585 F.2d 975, 978 (10th Cir. 1978) (*per curiam*); *In re Colonial Realty Investment Co.,* 516 F.2d 154, 160 (1st Cir. 1975); *Taylor v. Wood,* 458 F.2d 15, 16 (9th Cir. 1972) (*per curiam*); *In re Samoset Associates,* 3 B.C.D. 393, 396 (D.Me.1978). *See generally,* Norton, *Real Property Arrangements Chapter XII, Federal Bankruptcy Act,* Part 14, Motion to Dismiss (1st Ed. 1977).

3. Undoubtedly, this proceeding has been characterized by want of prosecution and lack of progress toward the confirmation of a plan of arrangement. For 24 months the Debtors have sought help from several financial institutions, equity investors, and real estate developers. Not one of these sources has yielded a single firm commitment to lend new monies or make new equity investments in the Inn. Throughout this proceeding the Creditors have demonstrated that they are unalterably opposed to the confirmation of a plan of arrangement, as proposed by the Debtors. In reaching its conclusion this Court has specifically taken into consideration the following facts:

(a) The only substantial asset in said estate consists of real estate, the Inn, which the Creditors had a mortgage upon at the time of the filing of the petition for an arrangement, and which is being operated by a state court appointed receiver;

(b) The probability of a reorganization or rehabilitation of the Debtors is remote, and there is no likelihood that a plan of arrangement will be accepted or confirmed within the near future;

(c) There is a continuing loss to or diminution of the estate, and an absence of a reasonable likelihood of rehabilitation, and there is unreasonable delay by the Debtors that is prejudicial to the Creditors in view of the Debtors' inability to effectuate a plan; and,

(d) It would not be in the best interest of this estate and its creditors for this Chapter XII proceeding to continue to pend. The foreclosure action against the Debtors which has been filed and is pending in Arizona state court, and in which action the Debtors have counterclaimed on the bases of fraud and breach of the 1976 settlement agreement, may proceed without the continuance of this Chapter XII proceeding.

4. Under similar circumstances the United States Court of Appeals for the Ninth and Tenth Circuits have upheld the dismissals of Chapter XII proceedings. In *Taylor v. Wood,* 458 F.2d 15 (9th Cir. 1972) (*per curiam*) it was noted that:

(T)he Woods (the sole affected creditors) had been restrained from foreclosing their deed of trust since the inception of the proceedings; and that the debtor had received no bona fide offer (after consultation with over 400 real estate brokers) to purchase the property. *Id.* at 16.

In *Gardens of Cortez v. John Hancock Mutual Life Ins. Co.*, 585 F.2d 975 (10 Cir. 1978) (*per curiam*) the bankruptcy court had dismissed a Chapter XII proceeding without granting the debtor an opportunity to present an amended plan of arrangement, and without taking evidence on the creditor's motion to lift the stay and the debtor's counterclaim of alleged tortious interference with contract. The Court noted that:

> (A)s of the date of the dismissal order Cortez (debtor) had satisfied the claims of all unsecured creditors, and that its principal secured creditor, Hancock, was unalterably opposed to any plan and preferred to pursue its foreclosure rights in the state court. In such circumstance, submitting an alternate plan would be useless. . . . Hancock's request that the stay order be lifted became moot when the bankruptcy judge dismissed the petition. And by the same token, having dismissed the petition, the bankruptcy court lost jurisdiction to proceed further with Cortez' counterclaim. *Id.* at 978.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that the above captioned Arrangement Proceedings herein filed under Chapter XII of the Bankruptcy Act, be, and the same are hereby dismissed for want of prosecution.