Adelor J. Petit, Appellant, v. John F. Cuneo, Appellee.

Gen. No. 39,357.

Opinion filed April 19, 1937.   Rehearing denied May 3, 1937.

FRANKLIN R. OVERMYER and ROY E. OLIN, both of Chicago, for appellant; WENDELL H. NEY, of Chicago, of counsel.

CAMPBELL, CLITHERO & FISCHER, of Chicago, for appellee; DELBERT A. CLITHERO and RAYMOND P. FISCHER, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff filed his complaint alleging the malicious interference by defendant with the performance of a contract between plaintiff and the W. F. Hall Printing Company whereby plaintiff was damaged in the sum of $10,000; defendant filed a motion to dismiss, which was allowed, and plaintiff appeals.

A preliminary question is presented touching the filing of defendant's motion to dismiss. Upon filing of the complaint defendant asked for a bill of particulars, which was filed; it appears by affidavit that on September 14, 1936, which apparently was the last day of the time for defendant to plead, one of the attorneys for defendant delivered a copy of the motion to dismiss to a clerk with instructions to file the same; that it was filed in the office of the clerk of the superior court but due to an error or inadvertence in the clerk's office it was not marked filed; that on October 24th the attorney for plaintiff was informed by a deputy court clerk that the motion to dismiss had not been marked filed and had not been entered on the register; the affidavit asserted that the motion had been in the court folder all of the time since September 14th, and the court was asked to enter an order directing the clerk to file the motion *nunc pro tunc* as of September 14th; that on the same day the motion to file was made plaintiff moved for a default judgment for failure of defendant to plead, and both mo-

tions were heard at the same time; the court granted defendant's motion to file the motion to dismiss as of September 14th and also allowed the motion to dismiss.

Where it appears that a document is delivered to the office of the clerk of a court and has been placed in the files without being stamped as filed, it is proper to enter an order that it be marked filed as of the date on which it was delivered to the clerk. *Dowie v. Chicago, W. & N. S. R. Co.*, 214 Ill. 49, 54; *Hohmann v. Eiterman*, 83 Ill. 92. Moreover, Rule 8 of the Supreme Court provides that the judge may, for good cause shown, extend the time for filing any pleading, and that such order may be entered either before or after the expiration of the time. The trial court was justified in ordering the motion to dismiss to be filed *nunc pro tunc* as of September 14, 1936.

The principal question presented is whether plaintiff's complaint states a cause of action. It appears from the complaint and the bill of particulars filed that the W. F. Hall Printing Company, by resolution of the Executive Committee adopted July 17, 1934, employed J. Arthur Friedlund and Adelor J. Petit (plaintiff) to prepare a plan for obtaining the consent of bondholders to a revision of the provisions of a trust deed securing the bonds of the company and provided that they submit the plan to the Executive Committee for its consideration and approval; the resolution also provided that the compensation to these men for this work was to be fixed by the Executive Committee.

September 10, 1934, the Executive Committee adopted a resolution fixing the compensation of Friedlund and Petit for their services at $500 a month each, "plus a contingent fee to be determined by the Executive Committee after giving due consideration to the degree of success with which any such plan may

meet if adopted.'' This resolution was approved and ratified by the Board of Directors. February 21, 1935, apparently after the services had been completed, the Executive Committee adopted a resolution that the company to pay to Friedlund and Petit $30,000 each for legal services rendered in connection with the readjustment of the sinking fund provision of the company's bond issue; March 5th this action of the Executive Committee was ratified and approved by the Board of Directors and also, subsequently, by the stockholders of the company. Apparently both Friedlund and Petit during all of this time were members of the Board of Directors, but there is nothing in the record to support the suggestion made in defendant's brief that they voted on this subject.

Defendant was a large stockholder in the W. F. Hall Printing Company, owning more than 150,000 shares of stock. Plaintiff says that on or about April 8, 1935, defendant, by reason of his large holding of stock, secured the election to the Board of Directors of three men who were dominated by him; that he thereupon maliciously and unlawfully began to interfere with the performance of the contractual obligations of the Hall Company with reference to the payment of the sum of $30,000 to plaintiff, so that the company breached its obligations and refused to pay plaintiff $30,000 which it would have paid him but for the malicious interference by the defendant; that on April 4, 1936, the Hall Company tendered to plaintiff $20,000, refusing to pay the balance of $10,000; that plaintiff was obliged to accept the $20,000, and upon receiving this amount gave a receipt or release to the Hall Company of any and all claims of whatsoever description he had against this company or its subsidiaries; plaintiff alleges that by reason of defendant's wrongful interference he was damaged in

the sum of $10,000, which he asks defendant pay him, with interest.

Reduced to its simplest terms, this is a case where the services had been rendered and the amount of compensation to be paid plaintiff is to be fixed by the Executive Committee; this Committee fixes the amount at $30,000, but later changes its mind and concludes that $20,000 instead of $30,000 is fair and adequate compensation for the services rendered; this change of mind is brought about by the defendant, and the question is, Can he be held financially liable?

Plaintiff alleges in his complaint, and emphasizes in his brief, that the action of defendant was malicious. To this it is sufficient to reply in the language of Mr. Justice Cooley: "Bad motive, by itself, then, is no tort. Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful." Cooley on Torts (4th Ed.), sec. 534.

Could defendant, a large stockholder in the Hall Printing Company, lawfully bring about a reduction in the amount of plaintiff's compensation? All of the cases, with one exception, cited by plaintiff's counsel which sustain judgments against third parties 'for maliciously interfering with the performance of contracts, involve contracts that were executory which the third party had prevented being performed. Such cases are not applicable to the instant case, where the contract had been fully performed by plaintiff. Plaintiff cites *Hornstein v. Podwitz,* 254 N. Y. 443. That case involved a real estate broker's commission on the sale of the defendant's property; apparently the amount of the broker's commission was fixed by the amount for which the property was sold; the sale was completed and the amount of commission was then due the broker, but the president of the selling

company and the purchasers entered into a conspiracy to conceal from the broker the fact that the sale had been made, and agreed to divide the broker's commission among themselves; it seems this plan was at the instance of the president of the selling company, and it was held that he should respond in damages. It is apparent that the facts are not analogous to the situation in the instant case.

When plaintiff and Friedlund completed the work their conpensation was undetermined. It lay in the judgment of the Executive Committee as to what would be reasonable and fair compensation. The defendant, a large stockholder, had a legitimate interest in the amount of compensation to be paid plaintiff. We see no legal principle which would deny to him the right to interfere with the payment of what he conceived to be an excessive amount.

We find no case where the facts are precisely like those before us. *Kemp v. Amalgamated Ass'n, etc., Division No. 241,* 255 Ill. 213, held that union employees had a legitimate interest in the question whether their fellow workmen were members of the union and that because of this interest the union officials representing them were not guilty of malicious interference in calling a strike. In *Lukach v. Blair,* 178 N. Y. S. 8, it was held that even if the members of a directorate had caused a corporation to breach its contract, the directors could not be held open to tort claims, and especially is this true where full satisfaction could be had of a judgment obtained in an action against the corporation for breach of contract. In the instant case there is no allegation of insolvency of the Hall Printing Company. In *Winters v. University Dist. Bldg. & Loan Ass'n,* 268 Ill. App. 147, the officers of the association interfered with the sale of real estate which was under contract; it was held that as the association

held a mortgage on the property it had an interest in the matter which justified interference with the contract of sale; many cases are cited, all holding that one who has an interest may take action to protect his rights, and even if the interference is done with malice he cannot be held financially liable for the result of his actions.

Directors of corporations are elected to represent the stockholders and we see no reason why the stockholders, who are the real owners of the corporation and whose money is involved, cannot lawfully influence the action of the directors.

The order of the trial court dismissing the complaint was proper and it is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.