BLIVAS AND PAGE, INC., Plaintiff-Appellee, v. RAYMOND L. KLEIN et al., Defendants-Appellants.

(No. 71-77;

Second District—April 27, 1972.

Jerome H. Torshen, Ltd., and Robert F. Berrey, both of Chicago, for appellants.

Gann, McIntosh, Stead & O'Shaugnessy, of Chicago, (Donald J. Parker, of counsel,) for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This appeal is from judgment entered on a jury verdict of $30,000 actual damages and $15,000 punitive damages against both defendants Klein and Kay. The action was in two counts, but the jury's verdict was based on Count II only, which alleged breach of an oral agreement by defendant Klein to retain plaintiffs' architectural firm on a certain housing project in Rockford, wrongful inducement of that breach by defendant Kay, and conspiracy between defendants to accomplish those aims.

The project in question was one of the Federal Housing Administration's "221-D-3" projects for providing low rent housing by private developers. Plaintiffs are a former architectural partnership, incorporated in 1966. They had been involved in various FHA projects since 1957, and prior to, and during the period in which the instant project was constructed, had provided the architectural services on six other "221-D-3" projects, all successfully completed. Of the parties to this lawsuit, they were the first to become involved in the instant project, in 1963. At that time, it was under the tentative sponsorship of Harlemco, Inc., a New York developer. Plaintiffs were recommended to Harlemco by the general contractor, Suarez Brothers of Rockford. As architects for Harlemco, plaintiffs submitted the detailed drawings and specifications required by the FHA prior to its grant of loans. They also successfully petitioned the City of Rockford to annex and zone the property in question. In January, 1966, however, Harlemco's formal application for sponsorship, FHA Form 2013, which requires great architectural detail and financial information, was rejected by the FHA. With Harlemco out, Blivas sought a new sponsor. Within a few weeks of Harlemco's rejection, he proposed the idea to Klein, a former client. Klein was interested. He and Blivas approached the owner of the property to acquire an option thereon.

On this appeal, defendants do not question that during these discussions, Klein promised Blivas to retain plaintiffs as architects on the project provided that he was successfully approved as sponsor on his Form 2013 application therefor. Following this agreement, however, Klein let in additional sponsors under circumstances not entirely clear. Defendant Kay was one such additional sponsor and was the general contractor selected by Klein. The two others were business associates of Klein. Klein testified that he brought them in because the FHA told him over the phone that he lacked the "financing wherewithal" to

be sole sponsor. Blivas was aware, at some time in mid-1966 that new financial backers had been added when he attended a meeting with them, though Kay was not present, at which time the name of the project was changed. However, according the Blivas, a Mr. Stevens, the FHA official concerned, still referred to Klein as "sponsor" and as late as November 3, 1966, a communication from the FHA referred to "trust to be formed, Raymond L. Klein, Beneficiary." It thus appears to us that Blivas's characterization of these new parties was correct when he said that they simply "bought out" part of Klein's interest rather than having, at the time relevant herein, an official status as prospective sponsors. What the interest was of the two parties other than defendants does not appear in the record. Kay began with a mere 1% to comply with FHA regulations that he have an "identity of interest" in the project. Later, his construction company acquired 16%, so that as joint owner of the company with another party, he had an 8% total interest in the project.

In any event, under the new regime, dominated by Kay and Klein, Blivas and Page were rejected as architects, and a new architect, Mr. Fishman, was retained in January or February, 1967. Blivas's account of his ouster was that Kay attempted to interest him in a kickback scheme. According to Blivas, Kay stated an intention to certify to the FHA the full architect's fee, which would have been in the neighborhood of $55,000—$65,000, but demanded that plaintiffs work for only $10,000—$15,000. Blivas added that later, Kay increased the offer to $25,000.

Defendants' version was that Kay, having already worked on a project where Blivas and Page were the architects, opposed them from the start as poor and costly architects. Kay claimed that on this previous project, plaintiffs' drawings of windows lacked sufficient detail. Other than that, Kay knew little of plaintiffs or their workmanship. Klein testified that "Kay would not be the general contractor if he had to work with Blivas." He stated that partly because of Kay's opposition, and partly on his own, he decided to reject plaintiffs as architects. At no time during the trial, however, did either Klein or Kay produce any witness or other objective basis for their claims that plaintiffs were poor architects, or that their construction projects could be done more cheaply by other architects. Nor did they state that they had offered plaintiffs opportunity to cure any objections which they might have had.

In January, 1967, a letter signed by both defendants was sent to Blivas and Page offering them a $5000 finder's fee for the project, which was rejected by plaintiffs. Following this, the new architect Fishman, was hired. The date on which Fishman was hired is interesting in this case,

as will appear. Klein testified that he was hired "after the holidays" (Christmas) of 1966 or in January of 1967. Kay testified that Fishman was hired in January or February. Inasmuch as the FHA Form 2013, which included detailed architectural drawings and specifications, supposedly produced by Fishman, was submitted by the new consortium on February 10, 1967, there may be some substance in plaintiffs' claim, at trial, that their work was pirated for the "new" project. In view of our decisions, *infra*, that plaintiffs were entitled, under the circumstances, to receive the benefit of their contract, whether their work product was wrongfully appropriated becomes irrelevant. We thus mention it only to indicate the underlying situation.

To complete the basic facts in this case, Klein's FHA Form 2013, submitted on February 10, 1967, was approved some six or eight months later. The total amount actually borrowed under the FHA authorization to complete the project was roughly $2,400,000 according to Kay. This compares with the $2,562,000 maximum estimated cost set by the FHA in its letter of November 3 to defendant Klein, so that plaintiffs' project was quite similar in scope to that actually completed in December, 1968, without them.

The plaintiffs herein filed a motion to strike point I of defendant's argument on appeal that the evidence does not establish a contract subject to performance. We have taken this motion with the case. In view of our decision herein the motion is denied.

Subsequent to the above motion the defendants filed a motion for leave to file an answer to the second amended complaint and plaintiffs have objected thereto. This motion, likewise, was taken with the case. The trial court held that the answer to the amended complaint would stand as the answer to the second amended complaint filed after the conclusion of the proofs herein. Likewise, in view of our decision herein, the denial or allowing of this motion becomes moot.

■■ We first consider the defense that under the oral agreement between Klein and Blivas, that Klein would not be bound to retain plaintiffs as architects unless, as a condition precedent, Klein became the one and only sponsor on the project. It may be noted that this defense, if successful, might exculpate both defendants from liability for actual, not to mention punitive damages. However, such defense was not specifically raised in defendants' post trial motion, which merely asserted that the verdict was contrary to the law, the evidence, and the law and the evidence in finding breach of contract. This is not the specificity required under the Supreme Court Rules SHA 110A, 366 (2) (iii), successor statute to the Civil Practice Provision 68.1 (2). For a fuller treatment of these provisions see our opinion, *Danielson v.*

*Elgin Salvage and Supply Company, Inc. and Moses Johnson* (1972), 4 Ill.App.3d 445. In any event, the defense is at best a weak one here where Klein brought the new backers in himself and was therefore instrumental in defeating such alleged condition precedent. (See *Standard Asbestos v. Kaiser* (1942), 316 Ill.App. 441, 45 N.E.2d 75.) Conceding that plaintiffs would appear to have known of these additions to the group, in any case, Klein has not sought to argue that his contract was frustrated, or impossible to perform due to dissensions between plaintiffs and Kay, and moreover, he made no good faith attempts to retain plaintiffs so such a defense would be difficult to maintain if he had made it. In light of the foregoing, we find no basis for reversing the verdict and judgment on either the defense of condition precedent or other defenses mentioned with respect to Klein.

Defendant Kay next contends that he committed no actionable wrong in persuading Klein to breach the agreement with the plaintiff. In support of this contention he cites *Doremus v. Hennessy* (1898), 176 Ill. 608, 52 N.E. 924 and states that "malice" is still an essential element of the tort.

■■ The first case dealing with this question is found in *Lumley v. Gye* (1853), 2 Ell. & Bl. 216. As pointed out in *Supreme Savings and Loan Association v. Lewis* (1970), 130 Ill.App.2d 16, 264 N.E.2d 857 the court stated:

"* * * The principle of law which has evolved from *Lumley* is now established in Illinois and a defendant will be held liable if he intentionally and without justification induces another to breach his contract with a third party * * *."

■■ In *W. P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill.App.2d 404, 152 N.E.2d 615 at 621 the court stated:

"* * * Malice, as was stated in *Meadowmoor Dairies v. Milk Wagon Drivers' Union*, 371 Ill. 377, 21 N.E.2d 308, in such a case is the doing of such a wrongful act intentionally and without just cause * * *.

* * * It is well settled that an action will lie *ex delicto* against one who intentionally and knowingly and without reasonable justification or excuse induces a breach of a contract * * *."

As pointed out in *Herman v. Prudence Mutual Casualty* (1969), 41 Ill.2d 468, 244 N.E.2d 809, the theory of the action as announced in *Lumley v. Gye, supra,* has been repeatedly reaffirmed in this State and is in conformity with Section 766 of the Restatement of the Law of Torts. In this Court's opinion an intentional knowing act committed by a third party without justification or excuse causing the breach of a contract constitutes an actionable tort.

Kay next contends that the architects herein are entitled to no relief because of his actions as he is a party to the contract and cannot commit the tort of inducing the breach thereof. This is a novel argument and without merit as Kay was not an original party to the contract between Klein and Blivas and Page, the architects.

Defendant Kay cites *Petit v. Cuneo* (1937), 290 Ill.App. 16 for the authority that he had become a partner of Klein thus having a confidential relationship with a party to a contract and was privileged to induce the breach of that contract. *Petit, supra,* does not stand for the proposition that a third party may become a partner of a party to a contract and then induce him to break the pre-existing contract which is the situation here. Once again, this argument was apparently not raised in the trial court and is presented here for the first time. The argument is further objectionable and without merit inasmuch as the defendant's answer in the trial court denied that Kay had an interest in the contract or had persuaded Klein to breach the same. Likewise, we do not believe that *Affiliated Distillers Brands Corp. v. Gold Seal Liquors, Inc.* (1957), 13 Ill.App.2d 249, is applicable to the facts herein as stated by the appellee. While it is true that a party cannot be sued in tort for inducing the breach of his own contract, he can be sued for conspiracy with a third person who has induced him to breach his contract resulting in actual damage.

The next contention of the appellant is that the plaintiffs did not prove a conspiracy between Klein and Kay by clear and convincing evidence as required by law. Defendant contends that the evidence of conspiracy herein amounts to no more than accusation, characterization, and innuendo. However, a special interrogatory was submitted to the jury wherein the jury was asked whether or not "the defendant Irwin Kay conspired with the defendant Raymond Klein to breach an agreement to employ the plaintiff as architects  *  *  *.*" The jury found such a conspiracy and answered the interrogatory in the affirmative. In this court's opinion, this too, is a fact of evidence adduced in the trial court to be determined by the trier of facts, in this case the jury. We see no reason for substituting our judgment for that of the jury on whether or not a conspiracy existed.

Defendant further contends a finding of conspiracy alone is insufficient as a matter of law, to permit an award of punitive damages. While the distinction between criminal conspiracy and civil conspiracy should be borne in mind, there are a number of Illinois cases dealing with the question of awarding punitive damages in addition to actual damages. (*City of Chicago v. Martin* (1868), 49 Ill. 241, 245; *Knierim v. Izzo* (1961), 22 Ill.2d 73, 174 N.E.2d 157, 165; *B. R. Paulsen & Co. v.*

*Lee* (1968), 95 Ill.App.2d 146, 237 N.E.2d 793, 796; *Doremus, supra.*) There is no question but that punitive damages for an unlawful conspiracy must be based upon an element of malice, violence, willful or wanton conduct, oppression or wanton recklessness, or circumstance of aggravation.

Counsel for the defendant contends that under the instruction herein given,

"As to Count II of the complaint, the plaintiff has the burden of proving each of the following propositions as to the defendants Raymond Klein and Irwin Kay.

First, that the defendant Raymond Klein did enter into an agreement to employ the plaintiff's firm as aforesaid.

Second, that defendants Kay and Klein conspired together and that pursuant to said conspiracy defendant Klein did breach the said agreement.

Third, that the defendant Kay wrongfully induced the defendant Klein to breach the said agreement.

Fourth, that plaintiff suffered actual damages as a result of the breach.

      ✺    ✺    ✺

If you find that defendants were guilty of a conspiracy which caused damages to plaintiff and if you believe that justice and the public good require it, you may, in addition to any actual damages to which you find plaintiff entitled, award plaintiff an amount which will serve to punish the defendant and to defer others from the commission of like offenses."

the jury might be led to think that punitive damages might be awarded merely on the premise that Klein conspired to breach the contract.

It is difficult to ascertain from the record whether the punitive damages were based upon any attempt to defraud the F.H.A. as set forth above, or whether the instruction did infer that the acts of Klein and Kay conspiring together were malicious in nature.

In *Eshelman v. Rawalt* (1921), 298 Ill. 192, 196-97 the Supreme Court held that:

"Punitive, vindictive or exemplary damages are allowed in this State where a wrongful act is characterized by circumstances of aggravation, such as willfulness, wantonness, malice or oppression, but to warrant an allowance of such damages the act complained of must not only be unlawful but must partake of a wanton and malicious nature ✺ ✺ ✺. The courts recognizing the doctrine within its proper scope ought to exercise a high degree of watchfulness to prevent it from being perverted and extended beyond the real principles upon which it is based

by allowing plaintiffs, through the instrumentalities of instructions to the jury, to characterize the acts of the defendant with degrees of enormity and turpitude which the law does not affix to them. The universally recognized rule where the doctrine is in force is that such damages may be recovered only in cases where the wrongful act complained of is characterized by wantonness, malice, oppression or circumstances of aggravation. [Citation.] In the absence of these elements the damages cannot exceed, and must be confined strictly to, compensation for the injury sustained. Where punitive, vindictive or exemplary damages may be assessed they are allowed in the interest of society in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future, and a frequent objection to the doctrine is in allowing an individual to recover and appropriate damages for an offense against the social order and in the interest of society. This consideration enforces the injunction of this court for watchfulness to see that the right is not abused."

As thus can be seen, further examination of the record does not in fact disclose the basis upon which the court instructed the jury as to punitive damages. In the case of a third party inducement for breach of contract, malice or a similar act such as violence, wilful or wanton conduct, oppression or recklessness is not only relevant but necessary for the awarding of punitive damages.

■■ In the opinion of this court the conduct alleged and proven herein while sufficient for the awarding of actual damages to the plaintiffs is not characterized by the type of wantonness, malice, oppression or circumstances of aggravation necessary for the awarding of punitive damages.

The judgment of the court in awarding punitive damages is reversed and set aside and the judgment of the Circuit Court on the jury verdict as to actual damages is affirmed.

Judgment affirmed in part and reversed in part.

ABRAHAMSON and T. MORAN, JJ., concur.