EUGENE C. SWAGER *et al.*, Plaintiffs-Appellees, *v.* PETER J. COURI *et al.*, Defendants-Appellants.

Third District   No. 77-417

Opinion filed May 23, 1978.

C. Brett Bode, of Bernardi, Ault & Bode, of East Peoria, for appellants.

Bret S. Babcock, of Davis & Morgan, of Peoria, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Peoria County awarding both actual and punitive damages for tortious interference with contractual relations.

The plaintiffs, Swager, Johnson, Anderson, Blye, Gramley, Harris and Lang (hereinafter known as Swager) alleged that the defendants, Couri, Riley and Reardon, while acting as officers, directors and shareholders of the Fondulac Nursing Manor, Inc. (hereinafter known as Fondulac), intentionally induced Fondulac to breach its contract with Swager and thereby deprived Swager of payment for architectural services rendered under the contract.

Early in 1969 Charles Blye, a partner in Swager, and Riley and Couri discussed the proposed construction of a nursing home in East Peoria, Illinois. On March 31, 1969, Blye prepared a sketch of the proposed site for the nursing home and presented it to the zoning board of East Peoria. On May 22, 1969, Blye met at the site with Couri and Riley, who stated that they wanted to organize a group of investors to construct a nursing home. Between May and July 16, 1969, Blye and Riley went to Springfield to meet with FHA officials regarding financing of the proposed nursing home project. On July 16, 1969, Blye met with a group of investors at Swager's office where he discussed the project.

In August of 1969 Swager prepared a proposed agreement which was signed by Blye and sent to Couri. This agreement was not signed by Couri

or Riley or any other members of the group of investors considering the construction. Swager was informed that it would not be signed until the group determined whether the enterprise would be a land trust or a corporation.

On December 16, 1969, Blye attended a meeting of the proposed investors at Swager's office and was asked to commence the schematic design portion of the project. From December 16 until April 22, 1970, Swager performed architectural services for a committee of 15 persons, including Couri and Riley, in connection with the proposed construction of the nursing home.

On March 16, 1970, Couri, acting as incorporator, filed articles of incorporation for Fondulac Nursing Manor, Inc., as an Illinois for profit corporation with an initial stated capital of $1,500.

On April 22, 1970, 15 original shareholders, including Couri and Riley, met at Swager's office with Blye. At this meeting directors and officers of the corporation were elected, previous actions of the incorporator and promoter, Couri, were ratified and an unsigned agreement dated August 20, 1969, between Fondulac and Swager was approved. The directors were informed by Blye that Swager had $5,023.47 invested in Fondulac.

Subsequently, 13 of the 15 investors withdrew from Fondulac.

In late August or early September of 1973, defendant Reardon met with Blye and attorneys for Swager at their office in Peoria and Reardon advised Swager's attorney that Fondulac was without funds and had not had any money for some two years and that the corporation was dissolved or in the process of being dissolved.

On September 11, 1973, the defendants Couri, Riley and Reardon filed a statement of intent to dissolve the corporation and on September 27, 1973, filed articles of dissolution. No written notice of intent to dissolve the corporation was sent to Swager.

Reardon understood that Swager would be unable to recover its fee after dissolution of Fondulac but did not believe that dissolution would diminish any dollar rights of Swager because there were no corporate assets for Swager to recover at the time of dissolution. Riley knew that Fondulac was without any money at all and that Swager would not be paid. Couri was aware that if Fondulac were dissolved there would be no corporation after the dissolution and assumed that Swager could only seek payment up to the value of the assets of Fondulac. He thought that there was less than $1,000 in corporate assets at the time of dissolution. He said that he and Riley came into possession of those assets.

At the time of the dissolution of Fondulac, Swager's claim was the only outstanding indebtedness.

Subsequent to the dissolution, Riley, Couri and Reardon formed a Nevada corporation; they became the sole investors, shareholders,

directors and officers of that corporation; and that corporation eventually constructed a nursing home utilizing the services of architects other than Swager.

The gist of Swager's complaint is that by dissolving Fondulac, Couri, Riley and Reardon deprived Swager of the fees which Swager would have received under the contract to design the nursing home.

Couri, Riley and Reardon (hereinafter known as Couri) have argued several points on appeal and Swager has raised one additional issue: that certain points raised by Couri were not properly preserved for appeal because they were not stated with specificity in Couri's post-trial motion.

Couri's post-trial motion stated:

"1. That the pleadings of Count IV of Plaintiffs' complaint are presented to allege the commission of Intentional Interference with Contractual Relations, but such pleadings fail to allege all elements of the cause of action."

Couri argued that the language of the post-trial motion was sufficient to preserve for appeal the argument that the complaint failed to allege facts from which unjustified conduct of Couri could be inferred. Couri argues that the post-trial motion also contained the language:

"8. That a defendant does not incur liability for intentional interference with contractual relations if he is justified in his interference."

■■ It is a well-established rule in Illinois that the failure to challenge a pleading in the trial court waives error on appeal. (*Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 360 N.E.2d 785.) The purpose of the rule is to give the trial court an opportunity to correct errors. (*Richman Chemical Co. v. Lowenthal* (1958), 16 Ill. App. 2d 568, 149 N.E.2d 351.) It is also true that any errors alleged must be stated with specificity. (*Lawler v. Pepper Construction Co.* (1961), 33 Ill. App. 2d 188, 178 N.E.2d 687.) While the post-trial motion of Couri could have been better drafted, we think that the language was sufficient to give the trial court notice that the complaint by Swager was deficient because it did not allege all the elements of the tort of interference with contractual relations.

■■ It is also a well-established rule in Illinois that when a cause of action has not been stated and there has been no cure effected by trial, there can be no recovery. (*Lasko v. Meier* (1946), 394 Ill. 71, 67 N.E.2d 162.) If no cause of action is properly alleged in the complaint and if any defects which are contained in the complaint are not cured at trial, the challenge may be raised the first time on appeal. *Lasko v. Meier* (1946), 394 Ill. 71, 67 N.E.2d 162; *Vansickle v. Summers* (1973), 15 Ill. App. 3d 323, 304 N.E.2d 132.

The first issue raised on appeal by Couri was that the complaint failed

to state a cause of action for the tort of inducing breach of contract by corporate directors, officers and shareholders. The complaint alleged that Couri had a duty to avoid wilfully and intentionally inducing Fondulac to breach its contract with Swager and that Couri was guilty of intentionally inducing Fondulac to breach its contract with Swager and that Couri was guilty of intentionally inducing Fondulac to breach its contract by filing an intent to dissolve the corporation with the Secretary of State and by filing the articles of dissolution at a time when Couri knew of the contract between Fondulac and Swager and as a result Swager was not paid its fee under the contract.

■■ The tort of inducing the breach of contract has long been recognized in Illinois. It is the intentional and unjustified inducement of breach of another's contract which results in liability. (*Blivas & Page, Inc. v. Klein* (1972), 5 Ill. App. 3d 280, 282 N.E.2d 210.) The elements of the cause of action are a valid contract, defendant's knowledge of the existence of the contract, defendant's intentional and malicious inducement of the breach of the contract, breach of the contract caused by defendant's wrongful conduct and resultant damage to the plaintiff. (*Bergfeld v. Stork* (1972), 7 Ill. App. 3d 486, 288 N.E.2d 15.) Malice is lack of justification for defendant's conduct. *W. P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill. App. 2d 404, 152 N.E.2d 615.

■■ The act of dissolution of a corporation is not in itself sufficient foundation for the tort action even if it results in the breach of contracts. (*W. P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill. App. 2d 404, 152 N.E.2d 615.) If the dissolution is motivated by good faith judgment for the benefit of the corporation rather than personal gain of the officers, directors or shareholders, no liability attaches to the dissolution. *Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171; *W. P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill. App. 2d 404, 152 N.E.2d 615.

■■ The complaint herein states no facts that the dissolution of Fondulac was unjustified. Swager insists that allegation of dissolution before payment of all outstanding indebtedness is sufficient to show lack of justification. We disagree. We believe that if a corporation is without funds and if there has been no misappropriation of funds by officers, directors, or shareholders of the corporation, then a dissolution of the corporation is proper. If creditors of the corporation are unpaid at the time of the dissolution they have a remedy in contract but not in tort unless they can prove that the dissolution was unjustified. In this instance dissolution is justified if the decision to dissolve the corporation is not motivated for the benefit of the officers, directors or shareholders. Therefore, we hold that the complaint does not state a cause of action which will support a judgment.

Since the issue of stating a cause of action was raised for the first time on appeal, we must give consideration to the evidence presented at trial to determine whether a cause of action was proven even though not pleaded. There can be no doubt that the plaintiff must introduce facts which support its theory of recovery. In order to support its theory Swager must show that Couri acted for his personal benefit and contrary to the interest of Fondulac. The evidence here does not show a benefit to Riley, Couri or Reardon. The evidence did show that 13 shareholders withdrew from the corporation and that there simply was insufficient funding left to pay Swager. There was no evidence that Couri, Riley or Reardon had converted the assets of the corporation to their own use. There was no evidence that any of them used the plans designed for Fondulac for their own personal use or for the nursing home which was built by the subsequent corporation. The most benefit which Swager could prove was that Couri and Riley came into possession of somewhat less than $1,000 which was all that remained of the corporate assets. As we have stated before, whether this amount should have been paid to Swager is the subject of a contract action.

We hold, therefore, that Swager has not pleaded a cause of action which will support a judgment and has not introduced at trial evidence which would cure such a defect in the pleadings.

Since we reverse the judgment of the trial court we need not discuss the remaining issues presented in this appeal.

For the reasons stated above, the judgment of the circuit court of Peoria County is hereby reversed.

Reversed.

BARRY, P. J., and STENGEL, J., concur.