DP SERVICE, INC., Plaintiff,

v.

AM INTERNATIONAL et al., Defendants.

No. 80 C 834.

United States District Court, N. D. Illinois, E. D.

Jan. 26, 1981.

Matthew N. Chaconas, Erde & Chaconas, Chicago, Ill., for plaintiff.

Peter B. Freeman, and Michael D. Renner, Lake Forest, Hopkins & Sutter, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

DP Service, Inc. ("DP") brings this action based on the breach of an alleged distributorship agreement entered into with defendants AM International, Inc. and Jacquard Systems (collectively "AM"). DP's two-count complaint charges breach of contract and tortious interference with prospective economic advantage. AM has moved for dismissal of both counts. For the reasons stated in this memorandum opinion and order, AM's motion is denied as to Count I and granted as to Count II.

*Choice of Law*

In this diversity case the Illinois substantive law to which this Court looks includes its choice-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Those rules are not the same for the two theories, breach of contract and tort, sought to be invoked by DP's Complaint.

1. *Count I: Alleged Breach of Contract*

Count I of the Complaint alleges the existence and AM's subsequent breach of a written agreement dated July 1, 1978 establishing DP as a non-exclusive distributor of AM's products in Illinois. AM argues that the alleged agreement is unenforceable because no written agreement was ever signed by AM or any of its agents and because any claimed oral agreement would run afoul of the Statute of Frauds.

Illinois has not yet adopted the "most significant contacts" approach for contract choice-of-law questions, as it has in other areas of substantive law. Nor is there a sufficiently strong indication of so doing in recent Illinois Supreme Court decisions to justify this Court in not following the existing law in this respect.

 Accordingly this Court is required to follow the law as set down in such cases as *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27, 31–32 (1st Dist. 1973): If a contract is to be performed in more than one state, the law of the place of execution applies as to questions of validity, construction and scope as well as performance. Here the alleged Distributorship Agreement[1] calls for DP as distributor to perform its activities in Illinois, while it contemplates that AM as manufacturer will manufacture and ship its products to DP

---

1. There is to be sure an element of anomaly in referring to the terms of the disputed contract when one of the parties is denying its validity or enforceability. There are two answers to that apparent paradox. First, AM does not really claim that the parties did not have a contractual relationship—which, to the extent the parties dealt with each other, was necessarily governed by the terms of the Distributorship Agreement—but rather that AM was not bound by its specified *term* because it was invalid or non-enforceable (either as a written or as an oral contract). Second, as a pragmatic matter, the Court has reviewed Illinois law and is satisfied that it would lead to the same result (see Illinois citations subsequently referred to in this opinion).

"F.O.B. at the Manufacturer's factory" (¶ 4.2) in California. Thus the answer under the Illinois conflicts rule is to look to the place of execution.

On that score the alleged agreement has two provisions:

(1) It states on the cover page, "This Agreement shall first become effective upon the Manufacturer's acceptance of the Distributor's initial order...."—which would be a California act.

(2) Paragraph 15.7 provides, "This Agreement may be executed in counterparts, and whenever signed shall be deemed delivered and executed at Santa Monica, California." Therefore Illinois choice-of-law rules lead to California, the same law that is specified by Paragraph 15.6 of the Distributorship Agreement:

> This Agreement shall be interpreted and governed exclusively by California law.

## 2. Count II: Alleged Tort Liability

DP's second Count sounds in tort. In that area of substantive law Illinois has adopted the "most significant contacts" choice of law rule, *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970). *Ingersoll* requires consideration of four factors:

(a) place of injury;

(b) place where the conduct occurred;

(c) place of incorporation and place of business of the parties; and

(d) place where the parties' relationship is centered.

In this case the alleged injury occurred in Illinois. AM's claimed conduct, interfering with DP's business, had its effect and may have been carried out in Illinois, but doubtless would have been conceived in AM's corporate headquarters in California. DP is incorporated and does business in Illinois, while AM is incorporated in Delaware but operates in California. Finally, the relationship of the parties stems from a con-

tract negotiated in both Illinois and California and, as already discussed, calling for performance in both states.

■ Thus one of the four factors points to Illinois, another involves either a divided or primarily California situs, and the other two are evenly balanced between Illinois and California. Under the most significant relationship test, the place of injury is given presumptive importance only to be supplanted when another state has a *more* significant relationship. *In re Air Crash Disaster*, 644 F.2d 594 (7th Cir. 1981). Because California's contacts are at best of equal significance with, and indeed appear to be less significant than, those of the place of alleged injury, Illinois law is controlling.

## Count I: Alleged Breach of Contract—The Substantive Law

California's Statute of Frauds, Cal.Civ. Code § 1624, provides[2]:

> The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent:
>
> 1. An agreement that by its terms is not to be performed within a year of the making thereof...

Because the Distributorship Agreement specifies a 24-month term, renewable for two additional periods of 12 months each, it was not valid unless there was a writing sufficient to take it out of the Statute of Frauds.

■ As a general rule the "in writing" requirement may be satisfied by a contract comprising two or more writings, only one of which need be signed by the party to be charged. Corbin, *Contracts* § 512. California follows that general rule. *Walsh v. Standart*, 174 Cal. 807, 164 P. 795 (1917); *Searles v. Gonzalez*, 191 Cal. 426, 216 P. 1003 (1923).[3]

---

**2.** Ill.Rev.Stat. ch. 59, § 1 et seq. is comparable, except that it speaks in terms of non-enforceability rather than invalidity.

**3.** Again Illinois law is consistent. See *Jones v. Olsen*, 80 Ill.App.3d 1016, 36 Ill.Dec. 245, 400 N.E.2d 665 (2d Dist. 1980); *Mid-Town Petroleum, Inc. v. Dine*, 72 Ill.App.3d 296, 28 Ill.Dec. 261, 390 N.E.2d 428 (1st Dist. 1979).

■ DP acknowledges that the original Distributorship Agreement is unsigned by AM but argues that later documents, signed by AM, constitute a sufficient writing in conjunction with the original.[4] Complaint Exhibit E is a letter from AM to plaintiff, signed by AM's Vice President-Sales Donald Novak, referring to "your current Distributor Contract" (quite plainly a reference to AM's printed form of Distributorship Agreement, Exhibit A, which DP had signed). Exhibit F, a letter from AM's President Edgar Bolton to DP, states that AM "fully intends to honor the agreement we have with your organization." In light of those exhibits it is somewhat remarkable that AM's memorandum in response to this Court's request to brief California law lays heavy stress on *Straus v. DeYoung*, 155 F.Supp. 215, 219 (S.D.Cal.1957). *Straus* distinguished the California Supreme Court decision in *Searles* in terms that appear to make the latter case and not *Straus* controlling here (the following quotation repeats the *Straus* language quoted in AM's memorandum, including its added emphasis):

> A memorandum signed by the party to be charged which forms no part of the contract, but which recognizes the existence of a contract, is a sufficient memorandum, and parol evidence is admissible to establish the same. *Searles v. Gonzalez*, 191 Cal. 426, 216 P. 1003 (1923).
>
> \* \* \* \* \* \*
>
> ... In [the *Searles* case] the party to be charged had not signed any document which formed an integral part of the contract, but had signed another document in which he expressly declared and recognized the existence of a contract. *In the instant case, the three letters signed by DeYoung do not mention or refer to the oral agreement embodied in exhibits 1 to 4 inclusive. None of said letters incorporates the oral agreement therein by any internal reference. None contains any language which indicates or from which might be inferred an intention on the part of the Defendants to authenticate or confirm the oral agreement.*

On a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must not only accept as true all well-pleaded allegations in the Complaint but must also construe those allegations in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). From that perspective, the Court cannot rule as a matter of law that the Exhibits attached to DP's complaint do not constitute writings sufficient to avoid the Statute of Frauds.[5]

AM next argues that if a valid agreement does exist between the parties, all of the relief requested by DP involves consequential damages. Because Paragraph 15.6 of the Distributorship Agreement contains a waiver of consequential damages, DP is precluded from recovering them under the contract. DP does not contest the validity of that provision but rather argues that it is not requesting consequential damages.

■ Neither party, however, addresses the more difficult question whether the injuries alleged in the Complaint should be classified as consequential, as opposed to direct, damages. For that reason the Court will deal with the issue only in threshold and non-definitive terms.

25 C.J.S. Damages § 2 states the concept this way:

---

4. AM mischaracterizes the original document as specifying that it could be accepted only if signed by one of the defendants. Indeed, the face of the document states, "This Agreement shall first become effective upon the Manufacturer's acceptance of the Distributor's *initial order....*" Paragraph 15.7 simply says, "This Agreement may be executed in counterparts, and whenever signed shall be deemed delivered and executed at Santa Monica, California." Neither of those clauses demonstrates, as a matter of law, that the agreement could be accepted only if signed by one of the defendants.

5. In view of this holding the Court finds it unnecessary to discuss DP's theories of equitable estoppel. That topic may be examined, if necessary, at a later stage of the proceedings in this action.

Consequential damages are such as are not produced without the concurrence of some other event attributable to some origin or cause; such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from the consequence or results of such act.

This Court has been unable to locate a California case defining "consequential" damages, but several California courts have defined the term "special" (as opposed to general) damages, a term closely related to consequential damages. *Monarch Brewing Co. v. George J. Meyer Manufacturing Co.,* 130 F.2d 582, 585 (9th Cir. 1942). "Special" damages were defined in *Myers v. Stephens,* 233 Cal.App.2d 104, 43 Cal.Rptr. 420, 433 (1965), as:

damages which do not arise from the wrongful act itself, but depend on the circumstances peculiar to the infliction of each respective injury.

■ For purposes of AM's motion it is enough to determine that at least some of DP's damages might not be classified as consequential damages. Its complaint alleges:

(a) disruption of DP's day to day business;

(b) prevention of DP's pursuing its sales programs;

(c) prevention of DP's entering into agreements with potential customers;

(d) loss of profits; and

(e) DP's incurring of expenses in developing territory, marketing AM's product, training DP's employees and paying attorneys to preserve its rights under the contract.

Unquestionably the Distributorship Agreement contemplated DP's selling of AM's machines for a profit. Alleged damages in the form of loss of profits and the disruption of day to day business, for example, could be viewed as flowing directly and immediately from the breach of the claimed contract; see *Myers v. Stephens* (loss of profits held to be general damages).

This Court cannot hold at this time that all of DP's requested damages are conse-

quential. It remains for future determination which if any of DP's claims are barred by the contract limitation.

*Count II: Alleged Tort Liability—The Substantive Law*

■ Both parties have treated the allegations of DP's Count II as asserting a claim for tortious interference with prospective economic advantage. That tort requires a showing of:

(a) a reasonable expectation of entering into a valid business relationship;

(b) defendant's knowledge of that expectation; and

(c) intentional interference by defendant preventing plaintiff from realizing that expectation.

See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 16 Ill. App.3d 709, 306 N.E.2d 549 (1st Dist. 1973), *aff'd in part, rev'd in part,* 61 Ill.2d 129, 334 N.E.2d 160 (1975).

■ DP alleges that AM wanted to terminate its distributorships in order to eliminate competition and take over the direct sales of its own products; that in furtherance of that desire, AM tried to coerce DP into signing a new and less favorable sales agency agreement; that after DP refused, AM denied the validity of the Distributorship Agreement and threatened its termination, all with the same coercive purpose; and that AM finally breached the contract wilfully and maliciously. When those allegations are distilled to their essence, it appears that the only allegedly tortious *act* was the breach of a contract between the parties.

■ But the tort of intentional interference with prospective economic advantage requires some action toward a *third party* that disrupts an economic relationship of a defendant. As stated in *Parkway Bank & Trust Co. v. City of Darien,* 43 Ill.App.3d 400, 2 Ill.Dec. 234, 357 N.E.2d 211 (2d Dist. 1976) (emphasis added):

Although the plaintiffs state in cursory language that the defendants 'intention-

ally interfered with plaintiffs' business affairs...' none of the particular acts alleged that the defendants purposely caused a *third person* not to enter into or continue with prospective contractual relationship.

One contracting party does not have a cause of action against the other for conspiring to breach their contract or for wrongfully interfering with its own contract. *Blivas & Page, Inc. v. Klein*, 5 Ill. App.3d 280, 286, 282 N.E.2d 210, 214 (2d Dist. 1972).

DP has not alleged any act of AM directed toward a third party. Even were DP able to prove that AM's *motive* in breaching the contract was to sell directly to DP's customers, under the Illinois cases that would not constitute the tort of intentional interference with prospective economic opportunity.

### Conclusion

AM's motion under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted is denied as to Count I and granted as to Count II. AM is ordered to answer Count I on or before February 6, 1981.