**In re DOUGLAS DUNHILL, INC., Debtor.**

Bankruptcy Nos. 80 B 450, 81 A 2239 and 81 A 2561.

United States Bankruptcy Court, N. D. Illinois, E. D.

Sept. 13, 1982.

Michael R. Turoff, Arnstein, Gluck & Lehr, Chicago, Ill., for Sears Bank & Trust.

Joel S. Siegel, Arvey, Hodes, Costello & Burman, Chicago, Ill., for Douglas Dunhill.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This cause came to be heard on the co-defendants', Sears Bank and Trust and SBT Leasing Corporation, application for summary judgment as to their liability for alleged interference with the contractual relations between plaintiff, Financial Underwriters, and Douglas Dunhill, Inc. This court, being fully advised in the premises, and, having carefully considered the pleadings and memoranda, hereby grants the co-defendants' motion for summary judgment.

The plaintiff (Financial Underwriters) claims that defendants (Sears Bank & Trust Company and SBT Leasing Corporation) with knowledge of an agreement between Dunhill and plaintiff, willfully, wrongfully, maliciously, intentionally, and with justification, induced Dunhill to abrogate, dishonor and breach its obligation to lease computer equipment from plaintiff under said agreement, and, instead, to lease the equipment from Sears and SBT. Defendants contend that there is no evidence that they had the requisite knowledge of a contract between plaintiff and Dunhill, and that defendants did not induce Dunhill to breach the contract.

## FINDINGS OF FACT

1. In 1976, Douglas Dunhill, the debtor in this case, talked to Sears and SBT regarding a potential equipment lease, but no agreement was consummated.

2. On June 22, 1977, Dunhill signed a Letter Agreement with plaintiff, Financial Underwriters, a company engaged in the business of financing and leasing equipment which stated that if plaintiff issued Dunhill an equipment leasing commitment in accord with specified terms on or before July 15,

1977, Dunhill would execute a lease agreement with plaintiff.

3. After signing the Letter Agreement, Dunhill encountered an officer of Sears who inquired if Dunhill had any current leasing interests. Dunhill replied that they were looking at a computer, and asked if Sears had any interest. Sears said they probably would be interested, and for Dunhill to call them. Plaintiff was not discussed nor is there any evidence that Sears or SBT knew of the Letter Agreement between plaintiff and Dunhill.

4. Dunhill called Sears and requested a rate quotation after which Dunhill asked Sears and SBT for a proposal. Certain financial information necessary for the preparation of the proposal was then given to Sears. Plaintiff was not discussed, nor is there any evidence that Sears or SBT knew of plaintiff or the Letter Agreement at that time.

5. SBT sent a proposal to Dunhill who then suggested changes. A meeting between Dunhill and defendants took place at which time the changes in the proposal were made. Nothing was said about any attempts by Dunhill to obtain other financing during this meeting.

6. The finalized proposal called for SBT to purchase the computer from Burroughs and to lease it back to Dunhill. Burroughs, the owner of the computer, provided defendants with information on the computer equipment, its original cost, and Dunhill's purchase credits.

7. The signing of the lease agreement between Dunhill and SBT took place on June 30, 1977. Present at the closing was a Burroughs form labelled "Additional Terms and Conditions" which had been previously prepared in contemplation of the lease agreement between plaintiff and Dunhill. This form indicated that Burroughs consented to Dunhill's assignment of its right to purchase the computer to plaintiff. However, the "Agreement for Equipment Sale", the actual lease *signed* by Dunhill and SBT, contained a line entitled "Additional Terms and Conditions" and the corresponding Burroughs form number lined out

by Sears and SBT, which indicated that the form "Additional Terms and Conditions" was not to be a part of the Dunhill-Sears agreement. At no time before or during the closing was there any conversation about plaintiff or the agreement between Dunhill and plaintiff.

8. On October 19, 1977 plaintiff (Financial) filed suit against defendants Douglas Dunhill, Sears Bank and Trust Co. and SBT Leasing Corporation in the Circuit Court of Cook County for breach of contract and for alleged interference with contractual relations.

9. Defendant Douglas Dunhill was put into involuntary bankruptcy in January, 1980 and on July 29, 1981 this case was removed from the Circuit Court to this court.

## DISCUSSION

■ The theory of the action for tortious interference with contract has been repeatedly reaffirmed and is in conformity with Section 766 of the Restatement of the Law of Torts. *Blivas & Page v. Klein,* 5 Ill.App.3d 280, 282 N.E.2d 210 (1977). The essential elements that must be proved for a party to prevail in an action for tortious interference with contractual relations are: 1) the existence of a valid contract, 2) knowledge by defendants of the existence of the contract, 3) an intentional unjustified inducement to breach the contract, 4) a subsequent breach by the third party, and 5) resulting damage to plaintiff. *Republic Gear Co. v. Borg Warner Corporation,* 406 F.2d 57 (1969); *Mitchell v. Weiger,* 87 Ill. App.3d 302, 42 Ill.Dec. 543, 409 N.E.2d 38 (1980). *Stevenson v. ITT Harper, Inc.,* 51 Ill.App.3d 568, 9 Ill.Dec. 304, 366 N.E.2d 561 (1977).

Section 56 of the Federal Rules of Civil Procedure provides the standards for when it is proper to render a summary judgment. Section 56(c) states that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no

genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law."

While plaintiff's and defendant's recitation of the facts are not identical, no material controversy over them exists. In addition, for the purpose of their motion for summary judgment, defendants assume there was a valid contract between plaintiff and Dunhill, that such contract was breached by Dunhill and that plaintiff suffered damage. Therefore, summary judgment is proper and based on a resolution of the following law questions:

1. Whether or not Sears and SBT had knowledge of the existence of an agreement between plaintiff and Dunhill.

2. Whether or not Sears and SBT induced Dunhill to breach an agreement with plaintiff.

KNOWLEDGE

■ The essential element to the establishment of a prima facie case of interference with contract is the determination of the fact that defendant did indeed have knowledge of the existing contract.

To be subject to liability ... the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract.

Restatement of the Law of Torts, 2d Section 766.

There is no evidence that Sears or SBT had ever seen the agreement between plaintiff and Dunhill prior to the time the suit was filed. Further, there is no evidence that at the time Sears was asked for a rate quotation, or when the proposal was made, or when the lease was signed that they knew the terms of the plaintiff's agreement. At no time did the officers of Dunhill or the representative of Burroughs Corporation discuss with Sears or SBT the fact that an agreement existed. Thus, the only basis for plaintiff's belief that Sears and SBT had knowledge of their agreement with Dunhill is the page of the Burroughs' purchase contract entitled "Additional Terms and Conditions" present at the clos-

ing on June 30, 1977. Additionally, there is no evidence that defendants saw this document prior to that date.

The section of the page "Additional Terms and Conditions" that plaintiff claims gave defendant knowledge of the existing contract reads:

Burroughs consents to the assignment by Customer to Financial Underwriters ... of Customer's right to purchase and obligation to pay for the equipment .... Burroughs understands that such assignment is to be made in contemplation of the purchase by the Leasing Company of the System and the leasing by the Leasing Company to Customer of the System covered by such Agreements.

■ This paragraph does not refer to an existing contract between plaintiff and Dunhill, but only that Burroughs would consent to an assignment "to be made". Plaintiff contends that this, at the least, should put defendant on notice that some arrangement existed about which defendants ought to have inquired further. However, the test of inducing breach of contract requires an intention on the part of the actor to interfere with another's contractual relations. To do so, he must know of the existence of the contract with which he interferes, or in any event, the facts from which such contract is reasonably to be inferred. This controlling principle, as stated in Harper, Interference with Contractual Relations, 47 N.W.U.L.Rev. 873, 880 (1953) was adopted and is the rule in Illinois. *Farley v. Kissell* (18 Ill.App.3d 139, 310 N.E.2d 385 (1974).

Since Dunhill was prepared to close the lease transaction with Sears and SBT on June 30 and, given the fact that Burroughs, who had prepared that page and whose representative was present at the closing, said nothing about the Financial-Dunhill agreement and raised no objection to this transaction, Sears could properly assume that whatever negotiations had gone on between Dunhill and plaintiff were terminated. In fact, in the preceding year, Sears and Dunhill had discussions regarding another equipment lease which was never con-

summated. Therefore, from defendant's past experience in dealing with Dunhill, Sears could easily have concluded that any reference to another agreement on the Burroughs form merely referred to negotiations which either Dunhill or the plaintiff had terminated.

■ Thus the evidence does not show that defendants had knowledge of the terms of the agreement between plaintiff and Dunhill or that circumstances at the closing gave defendants reason to infer an existing contract.

INDUCEMENT

■ Plaintiff contends that defendants induced Dunhill to lease the computer from them while on notice of the Financial-Dunhill contract. Liability results from the intentional and unjustified inducement to breach another's contract. *Blivas & Page, Inc. v. Klein,* 5 Ill.App.3d 280, 282 N.E.2d 210 (1972). Inducement may be any conduct conveying to the third person the actor's desire to influence him not to deal with the other, Restatement of Torts, 2d, Section 766, comment k. The law requires that the inducement to breach the contract be "malicious." *Candalous Chicago, Inc. v. Evans Mill Supply,* 51 Ill.App.3d 38, 9 Ill. Dec. 62, 366 N.E.2d 319 (1977). Malice, in this regard, is not used in the sense of ill will or hatred. Malice is lack of justification for defendant's conduct. *Swager v. Couri,* 60 Ill.App.3d 192, 196, 17 Ill.Dec. 457, 376 N.E.2d 456. *W. P. Iverson & Co. v. Dunham Manufacturing Co.,* 18 Ill.App.2d 404, 152 N.E.2d 615 (1958).

■ Plaintiff offers no factual basis for the assertion that defendants *persuaded* Dunhill to breach its agreement with Financial. Indeed, it was Dunhill who called defendants for a quotation of rates; it was Dunhill who requested a proposal from defendants, and it was Dunhill who later asked for changes. Plaintiff also claims that defendant's statement to Dunhill "if you are really serious, we'd like to look at it" was a solicitation of Dunhill's business, and thus contradicts defendant's testimony that Dunhill solicited a proposal from them.

But plaintiff has taken the statement out of context. The statement that defendant had an interest and would like to be called was not a solicitation but was a *response* to Dunhill's statement that Dunhill was "again looking at doing some kind of sale lease on computer equipment" during a discussion of business matters. (Alwood, 55, 56). Plaintiff's assertion that defendant *persuaded* Dunhill to breach their contract with Financial cannot be sustained in light of Dunhill's continued affirmative actions.

■ Plaintiff's contention that defendants induced Dunhill to breach their contract by offering Dunhill another contract with the knowledge that both could not be performed also fails. Comment n of the Restatement of Torts, 2d Section 766 states:

> One does not induce another to commit a breach of contract with a third person under the rules stated in this section when he merely enters into an agreement with the other with the knowledge that the other cannot perform both it and his contract with the third person.

To be held liable for interference with a contract, the defendant must be shown to have *caused* the interference . . . It is not enough that defendant has simply entered into one contract with the knowledge of another existing. Prosser, Law of Torts, 4th ed., 1971.

■ The court also notes Dunhill's predisposition to avoid their contract with plaintiff. Undisputed deposition testimony states that Dunhill did not view the Letter Agreement as a binding contract to lease computer equipment but merely as a statement of the terms upon which a lease with plaintiff would be based. Further, the evidence shows that Dunhill's agent was encouraged to seek an alternate financing arrangement. These facts, when coupled with Dunhill's overtures to Sears and SBT, further discredit plaintiff's claim of inducement. Defendant was asked for a proposal and supplied one. Even if defendant had knowledge of plaintiff's contract with Dunhill they may not be held liable for tortious interference therewith because the ele-

ments of persuasion and inducement by defendant are absent.

### CONCLUSIONS

In order to establish liability for tortious interference with a contract, it must be shown that the defendant either knew or should have inferred the existence of a contract. Clearly, defendant did not have knowledge of the terms of the contract, nor did the circumstances surrounding the signing of the equipment lease allow defendant to infer a contract between plaintiff and Dunhill existed.

Second, liability results from an intentional and unjustified inducement to breach another's contract. Dunhill's affirmative acts of contacting defendant and asking for a proposal, however, were the proximate cause of the breach and not defendant's supplying the proposal. Defendant's responses to Dunhill's requests do not constitute inducement as a matter of law.

WHEREFORE, IT IS HEREBY ORDERED that the defendants Sears and SBT's application for summary judgment in its favor is granted.